# CHARLESTON.

Bruce McLeod, *Adm'r., Etc. v.* The Charleston Laundry

(No. 6237)

Submitted November 13, 1928.   Decided November 20, 1928.

362

*Brown, Jackson & Knight,* for plaintiff in error.

*A. M. Belcher,* for defendant in error.

WOODS, JUDGE:

The Charleston Laundry Company complains of a judgment of the circuit court of Kanawha county affirming a judgment entered by the common pleas court of said county on a $5,500.00 verdict in favor of the administrator of Marjorie McLeod, in an action to recover for unlawful death.

The accident occurred just after the beginning of a blinding and driving rain storm in the 1500 block on Lee street, in the city of Charleston, at a point other than a street intersection. Midway of the block, and on the north side of the street, a walkway, known as Ruffner Walk, connects the north sidewalk of Lee with the south sidewalk of Washington street. Mr. McLeod and his wife, the decedent, lived on this walk, one hundred feet back from Lee. Prior to the accident, Dr. and Mrs. Banks had parked their car on the right (south) side of Lee street and opposite and slightly to the east of Ruffner Walk, for the purpose of picking up the McLeods and driving them to a party. As the latter were in the act of leaving their home to join the parties waiting in the car, the storm broke in all its fury, and the wife and husband, in the order named, started to run towards Lee street. On reaching the north curb of Lee street, Mrs. McLeod hesitated and with a parasol pulled down over her face and right shoulder to keep off the driving rain ran into the street where she was struck by defendant's truck, going east on Lee. There is but one slight deflection in the street in this block— the street being practically straight. The driver had just made a stop in the same block two hundred yards west of the point of the accident. The rain started as he was leaving. The truck, according to his testimony and that of his companion, was within eight to ten feet of her when she suddenly appeared in the center of the street. He swerved to the right as far as he could and applied the foot brake and reached for the emergency when unable to get away from her. The body of Mrs. McLeod, which was thrown into the air, caught on the left fender where it remained for a short

distance before falling into the street under the wheels of the car. The driver and companion locate the point where the truck stopped at about thirty-five or forty feet from the point of impact, while the plaintiff's witnesses place it at about twice that distance. The driver and his companion claim that the former was going fifteen miles per hour, which is within the rate prescribed by ordinance, while plaintiff and some of his witnesses (none of whom seems to have seen the car prior to the impact) estimate the speed at which the car was going at thirty to forty miles per hour—basing their conclusions largely upon the distance traveled by the car after the impact and before coming to a complete stop.

The points of error stressed are: (1) the insufficiency of the declaration; (2) the giving of instructions for the plaintiff numbers one, two and three, which were in effect predicated on the doctrine of the last clear chance; and the refusal of defendant's peremptory instruction.

While it was technical error to overrule the demurrer to the declaration, since the latter did not allege the appointment of the administrator, a new trial on that ground alone would be limited to the issue of the appointment of such administrator. *Moss* v. *Railway Company*, 75 W. Va. 62. Whether or not proof of appointment during the trial on the merits would suffice, we do not decide, as our views on the second assignment dealing with the merits of the case are controlling.

The relative duties imposed by the law on the pedestrian and the user of the motor vehicle on the public street are aptly expressed in 42 C. J. 1150-1151:

> "There is no imperative rule requiring a pedestrian about to cross a public street or highway to stop, or to look and listen for approaching motor vehicles, or to look for vehicles in intersecting streets, under penalty of being deemed negligent as a matter of law upon omission thereof, and whether or not a failure so to do is negligence is ordinarily a question of fact under the circumstances; but under the rule requiring every user of the highway to exercise reasonable care for his own safety and in so doing to make reasonable use of his faculties and intelligence to discover im-

pending danger, one who fails to look or listen for approaching vehicles before entering upon the traveled part of a street for the purpose of crossing it is usually negligent in fact. Thus a pedestrian who, without looking, steps suddenly into a roadway, or crosses with his head down, or with an umbrella so held as to cut off his vision, or who, having advanced into the traveled portion of a street, steps back into the path of a motor vehicle without observing whether the way is clear has been held guilty of negligence.''

The old doctrine that negligence, however slight, on the part of the plaintiff contributing to the injury would bar him from recovering has given place in our jurisprudence to the benign rule of the last clear chance; that is, though the plaintiff may have negligently placed himself in a position of peril, if the defendant sees him in such place of peril, and has time to avoid injuring him, the law requires him to do so. The plaintiff here by his instructions substantially based his right to recovery by invoking the doctrine of last clear chance. This attitude taken by him presupposes negligence either primary or contributory on the part of plaintiff's intestate. *McGowan* v. *Tayman,* 144 Va. 358; *Wilson* v. *Virginian Railway Co.,* 122 Va. 160. If there was no negligence on the part of the plaintiff's intestate, the driver's liability is not determined on the score of the last clear chance, but on the score of his primary negligence. The distinction is of great importance when the question of the degree of care required of the driver not to injure the plaintiff is at issue. In the case of driver's primary negligence not contributed to by that of the party injured, the fact that the driver may have done all that a prudent, careful driver could have done to avoid the accident, after he discovered the dangerous situation of the party injured, or by the exercise of ordinary care could have done so, will not relieve him from liability from his negligence prior thereto; whereas, if the question arise under the doctrine of the last clear chance which presupposes negligence on the part of the plaintiff, all that would be required of the defendant would be to do that which a prudent, careful driver would have done to avoid injuring the intestate after he discovered

her peril. So, if here the driver was driving at a rate beyond that set by the law, and while so driving had killed the intestate without contributory negligence on her part, he would not be permitted to say that he did all a prudent, careful driver would have done to stop the automobile, but that in spite of his efforts, he could not stop it—a defense which would be sufficient if the intestate was guilty of contributory negligence and the doctrine of the last clear chance was invoked to attenuate the legal consequence of such negligence. *Buchanan* v. *Railway Co.*, 102 W. Va. 426. In predicating a liability upon the defendant on the ground of last clear chance, the law only considers the lack of exercise of reasonable care of a prudent man in like circumstances. If the driver did exercise that degree of care which a man of ordinary prudence would have exercised under like circumstances to save the intestate from apparent injury notwithstanding the latter's negligence, he is absolved from any liability.

It is equally clear that mere knowledge or notice of the intestate's danger, without sufficient opportunity to effectively act upon such knowledge or notice, cannot be made the basis of a driver's liability. The authorities are unanimous in holding, therefore, that there must be an appreciable interval of time intervening between the injury and the driver's knowledge or notice of the intestate's dangerous situation. *U. S. Spruce Lumber Co.* v. *Shumate,* 118 Va. 471.

Let us examine the evidence in this case to see if the plaintiff has proven that his intestate's peril was discovered by the driver, or in the exercise of ordinary care could have been discovered, in time to avert the accident. It is undisputed that there was a terrific blinding rain storm at the time of the accident; that Mrs. McLeod was running across the street, holding her umbrella down over her head and right shoulder, pointed into the rain, so that she could not see vehicles approaching in the direction from which the rain came; and that she was about the middle of Lee street when struck. There is no evidence as to how far distant the truck was from the spot where the accident occurred when Mrs. McLeod started to run across the street. According to the driver's testimony, supplemented by that of the boy riding in the

seat with him, his truck was within eight or ten feet of the decedent when he suddenly observed her. It is evident under the undisputed facts here that the driver could not have stopped his truck, owing to the slippery condition of the street occasioned by the storm, in time to save decedent after she stepped from the sidewalk into the street in front of the oncoming car. As the Virginia court said: "The time and opportunity available were such that the mental and physical faculties would have had to act with more than human precision and with the quickness of electricity to have avoided its consequences." *Railway Co.* v. *Shiflett's Adm'x.,* 118 Va. 63. The driver says he swerved his car as far to the right as conditions would permit to avoid striking her, without avail. It must be remembered that it is an admitted fact that there was at least one car parked on the side of the street opposite the Banks' car at about the place of the impact—thereby narrowing the traveled way open to him.

Moreover, the books hold that the doctrine of the last clear chance is a duty imposed by law on both the plaintiff and defendant, and that, if being in plain view of each other, and with equal opportunity to prevent the accident, they are guilty of concurring negligence, there can be no recovery. Here the decedent had equal opportunity on reaching the curb of the street, before attempting to cross it, to observe the approach of the car, that the driver of the car had to observe the pedestrian. It is stated in 29 Cyc. 531: "This rule (last clear chance) has no application where the negligence of the person injured and of the defendant are concurrent, each of which at the very time when the accident occurs contributes to it."

There must be evidence of circumstances surrounding the injury, of probative value, to justify the court in instructing upon the doctrine of the last clear chance. Instruction number two is evidently based on *Deputy* v. *Kimmell,* 73 W. Va. 595, and instruction number three of *Truman* v. *Products Company,* 96 W. Va. 256, in neither of which cases do the facts bear any resemblance to those in the case at bar. In *Deputy* v. *Kimmell,* the plaintiff, who was ten and one-half years old, was injured at a street crossing by defendant who,

according to his own admission, saw the plaintiff sixty-eight feet away and was turning from one street into another, plaintiff not knowing that defendant intended to make the turn. Furthermore, the court concludes its reasoning respecting the relative duties of drivers and pedestrians at crossings with this language: "What may be deemed negligence by adults may not be chargeable as negligence by infants. In determining whether or not a plaintiff is guilty of contributory negligence the conduct of children should not be judged by the same rules which govern that of adults. Ordinary care for them is that degree of care and prudence which children of the same age are accustomed to exercise under like circumstances." (Citing cases.) In *Truman* v. *Products Company* the driver of defendant's truck admitted that "he saw the plaintiff at a distance of ninety feet or more as she came across the street and made no effort to stop until the truck was on her." In the *Deputy* case the accident occurred at a street crossing, and in both cases the person injured was walking across the street and, according to the undisputed evidence, the drivers of the automobiles had plenty of opportunity to have avoided an accident after the peril of the other party was discovered, which was not true in the instant case. Since the first instruction given for the plaintiff incorporates by reference the principle enunciated in instruction number two, it falls with the disposition made here of the latter. There have been in this court but few cases of collision between pedestrians and automobiles, but the principles of the doctrine of the last clear chance in other cases have been well settled. These principles are equally applicable to such cases as the one we have here. We see no escape from holding that the present case under the facts shown by the record as made is not brought within the last clear chance rule, but falls within the rule denying recovery on the ground of contributory negligence.

The case of *Ritter* v. *Hicks,* 102 W. Va. 541, is relied on by plaintiff. The facts in that case are dissimilar to the facts of the case at bar. There the plaintiff looked for approaching vehicles before attempting to cross the street, and after an appraisal of the situation, as to approaching vehi-

cles, attempted to cross the street. Here there is no evidence that the decedent adopted such precautionary measures. On the contrary, the position in which the umbrella was held by Mrs. McLeod from the time she ran from the Ruffner Walk into the street made impossible any survey by her of the street to the right for approaching automobiles. Her vision remained so obstructed up to the time of the impact. Her proven declarations subsequently made to persons at the hospital indubitably establish her negligence. Two witnesses, who were not shown to have any interest in the case, say that Mrs. McLeod at the hospital within half an hour after the accident, in response to a statement of her husband that "he had the driver out there", said: "My dear, it wasn't his fault; I don't know how I could have been so stupid to step in front of the car." The husband denies making the statement attributed to him and that his wife made any such statement to him. However, Helen James, one of the supervisors of the hospital in which Mrs. McLeod was being treated, says that the latter some time later said to her: "I don't know what made me so stupid to step in front of that automobile like I did." This statement is not denied. There is but little difference in the effect of the two declarations.

Ordinarily, the matter of contributory negligence is a question for jury determination. But counsel for defendant insists that the decedent was negligent as a matter of law. We find that appellate courts have dealt with cases strikingly similar to the present one. In *Shoe Company* v. *Ormsby's Adm'r*, 129 Va. 297, plaintiff's intestate stepped from the curb in front of an automobile truck about three or four feet ahead of it, and the court said: "The negligence of the decedent must therefore be considered as established." In *Lester* v. *Roach*, (1924) 155 La. 947, syl. pt. 1: "Where a policeman, on a dark night and during a high wind and heavy rain, while crossing a street at a place different from the regular crossing, and holding an umbrella over his head, was struck by defendant's automobile, driven at a moderate rate of speed, with all lights burning, plaintiff not observing the approach of the car and having nearly reached the curbing when struck by the right front fender and light of the auto-

mobile, held that, plaintiff's negligence being the proximate cause of the accident, a dismissal of the suit was proper.'' Syl. pt. 2: ''* * * held that the doctrine of the last clear chance was inapplicable.'' In *Atkins* v. *Bouchet* (Cal.), 223 Pac. 87, syl. 1, the court says: ''One struck by an automobile, who while crossing the street, glanced neither to the right nor the left, and with an umbrella held down to her waist line had her view of traffic completely cut off, and did not see the automobile until after the collision although the accident occurred in the middle of the day, held guilty of contributory negligence (as a matter of law).'' In the last mentioned case the accident occurred at the corner where plaintiff had stood while a street car was discharging passengers. Plaintiff had peeped under her umbrella a few feet before reaching the crossing and was struck before she reached the street car track. Her umbrella was held down to protect her from the rain. In *Crowder* v. *Williams,* 116 Kan. 241, the accident occurred near a crossing, the court held: ''Considering this case in its broad outlines, while we may and do sympathize with this hapless plaintiff, it would not be just to mulct the defendant in damages in behalf of a person so careless of her own safety as to step out behind a parked car on the side of a city street and hurry diagonally across it at a point other than an intersection without giving one precautionary glance in the direction from which an automobile might be approaching. Such lack of the simplest element of diligence on plaintiff's behalf barred her from any claim for damages notwithstanding the negligence of the defendant as specially found by the jury.'' In some of the cases cited it will be observed that the accidents occurred at street intersections, where the authorities hold that a very different degree of responsibility toward pedestrians rests on automobile drivers than elsewhere in the streets.

In this jurisdiction where the facts which control are not disputed and are such that reasonable minds can draw but one conclusion from them, the question of contributory negligence barring recovery is one of law for the court. Law and fact clearly bring the instant case within this rule. Therefore, the trial court should have given to the jury the per-

emptory instruction to find for the defendant. This ruling, of course, only applies to the record here made. As this case must be remanded for a new trial, the record on such trial may be materially different in substance.

*Judgment reversed; verdict set aside; new trial awarded.*