## CHARLESTON.

MALVINA WALLER *v.* NORFOLK & WESTERN RAILWAY COMPANY

(No. 6617)

Submitted February 11, 1930.   Decided February 18, 1930.

*F. M. Rivinus, Goodykoontz & Slaven,* and *Holt & Holt,* for plaintiff in error.

*George W. Crawford,* for defendant in error.

MAXWELL, JUDGE:

Defendant prosecutes this writ of error to a judgment of the circuit court of Mingo county for $7,000 damages for

the alleged wrongful death of plaintiff's decedent, Lazarus Waller, at a railroad crossing, at Nolan in Mingo county.

There are double railroad tracks through Nolan, extending practically east and west. The north track is for the east bound trains and the other for the west bound. The public highway crosses the railroad tracks from the north to the south side at the east end of the town, extending practically parallel with the tracks through the town and there re-crosses to the north side, thence in the general direction of the tracks in a westerly direction.

Soon after midday of September 4, 1928, the deceased and his son, Clifford Waller, and "Doc" Marcum and his wife approached, on the highway from the east, the town of Nolan en route from Williamson to their home in Wayne county. Clifford was driving the car; his father sat at his right. The Marcums occupied the rear seat. At the crossing just east of the town they crossed safely in front of a freight train going west. Clifford says the train was some distance away, running slowly, and that the automobile passed over the crossing without risk. The engineer and fireman say that the automobile crossed so closely in front of the engine that they feared a collision. However, both the train and automobile proceeded westward through the town toward the second crossing already mentioned. When the automobile reached the second crossing it stopped on the southern track with one or both of the front wheels just over the outside rail, and was struck by a fast moving east bound train which killed Lazarus Waller and the two Marcums. Clifford jumped and avoided injury. The train first mentioned passed over the crossing on the west bound tracks almost instantly after the accident.

At the crossing where the accident occurred the boards which were laid along side of the rails were not quite as long as the width of the traveled portion of the highway, though amply wide for two automobiles to pass thereover at the same time. The board on the inside of the first rail which the Waller automobile encountered lacked three or four feet of extending the full width of the traveled way. Clifford says that the right front wheel of the automobile dropped over the rail beyond the end of this board, causing the automobile to

stall; that the motor also stopped, and that while in that plight the train struck them. There is a sharp issue of fact as to whether the automobile was stopped before it proceeded upon the crossing. It is not seriously questioned that the automobile entered the crossing at a moderate rate of speed. Clifford says the car was in low gear. There is also an issue as to whether proper warning signals were given by the engine as the train approached the crossing. Though there was considerable testimony of witnesses who say they did not hear the signals, there is a substantial number of witnesses who say unequivocally that they heard the signals.

Defendant takes the position that, inasmuch as the fact that the board at the inside of the first rail reached by the automobile in 'question did not extend the full width of the traveled way was plainly discernible by travelers approaching from the east, and that the boards were all of ample length to permit automobiles to pass thereover, and even for two automobiles to be thereon at the same time and have plenty of room, it was negligent for the driver to drive the automobile over the rail beyond the end of the board and thus to cause the automobile to become stalled on the track. Reliance is here placed on the broad principle that a traveler who seeks to impute negligence to another must not himself be guilty of negligence which contributes to the injury of which complaint is made. *Phillips* v. *County Court*, 31 W. Va. 477; *Warth* v. *County Court*, 71 W. Va. 185; *Boyland* v. *City of Parkersburg*, 78 W. Va. 749; *Cavendish* v. *Ry. Co.*, 95 W. Va. 490; *Robertson* v. *Ry. Co.*, 99 W. Va. 356; *Krodel* v. *Railroad Co.*, 99 W. Va. 374.

And, further, on behalf of defendant it is said that while negligence of a driver is not ordinarily imputable to a passenger, it is equally true that a passenger may not close his eyes to danger, but must take reasonable precaution to avoid accident, and that where he does not do so and his negligence contributes to the accident there can be no recovery. *Jameson* v. *Ry. Co.*, 97 W. Va. 119; *Young* v. *Railroad Co.*, 96 W. Va. 534. It is urged that here the deceased as a passenger on the front seat of the automobile, by the side of his eighteen-year-

old son who was driving the car, had peculiar opportunity to observe the danger and to warn the boy against the same.

We think that these principles are applicable and are decisive of the case, and that the trial court should have sustained the motion of the defendant for a directed verdict in its favor. Serious duty rested not only upon the driver of the car to use reasonable care to avoid danger to himself and passengers, but an equal responsibility rested upon the boy's father,—plaintiff's decedent,—to use proper care for his own safety. People may not heedlessly submit to being rushed into positions of grave danger and then hold some other agency responsible for resulting injury. If the automobile was moving slowly as Clifford says it was, then there was all the more reason why both he and his father should have seen that they were driving over the rail beyond the end of the board and were thus getting themselves into a most dangerous situation. It was midday; the view of the driveway over the tracks was unobstructed; the off-set was on the father's side of the car. What else can be said on this point than that both father and son were negligent as a matter of law? It seems obvious.

On behalf of the plaintiff it is denied that either the driver or the decedent was negligent, but it is said that even if it be admitted that the deceased was negligent in the first instance, the fact is not decisive of the case. It is urged that under the doctrine of last clear chance there should be recovery in this case. That doctrine or rule of law is "based upon the idea that, when any person is in a place of danger, whether negligent or not, one who knows, or who might know and under the circumstances ought to know, of the danger, must use every precaution to avoid injuring him." *Johnson* v. *Delano*, (Neb.) 158 N. W. 1034. 'As the east bound train approached, on a curve, the crossing where the accident occurred, there was an open view of the crossing for a distance of from 555 to 700 feet. Neither the engineer nor fireman saw the stalled automobile in time to stop the train before the collision, but after it was seen by the fireman the train was stopped within a distance of about 480 feet. The fireman had been in service a long time and was competent to

run the engine and was doing so at the time, sitting at the engineer's post on the right of the cab of the engine. The engineer was at the fireman's place on the left.

The fireman testified that he was looking ahead and that he first saw the stalled automobile when within about two car lengths of it; that he immediately shut off the engine and applied the brakes and stopped the train within about ten car lengths; that the average car length is about 43 feet; that he was keeping a lookout but could not see the crossing sooner than he did because of the curve in the track (he being on the outside of the curve) which caused the boiler of the engine to obstruct his view. On cross-examination he said that the engineer being on the left side of the engine (the curve in the track being to the left) had a better view of the crossing than he had, but that as the engine approached the crossing the boiler shut off the engineer's view, too. Then these further questions and answers: "Q. You don't mean when a train is approaching this crossing and comes into this curve the view is entirely blind and nobody can see what is going on at the crossing? A. I didn't say that. Q. Is that true? A. No, sir. Q. Who could see? A. The engineer over on the other side could have seen the crossing at one time. Q. How far could he have seen it? A. Oh, I judge six car lengths, maybe. Q. You mean six car lengths away from the crossing? A. Six car lengths before the boiler cut his view off. Q. And what distance away from that crossing would that view become visible, how far would you be west of the crossing where it would be visible for him to see the crossing if he looked? A. Well, I couldn't say positively." The engineer testified that he was keeping a lookout ahead but did not see the automobile before the accident. And in answer to a question as to why he could not see the automobile, he said: "Well, there is a curve to the left and the hill prevented me from seeing it until I got in about 12 or 15 car lengths of it and after I went a few car lengths farther the boiler came around and prevented me from seeing it." He thinks the train was stopped within about 12 car lengths and that it could not have been stopped within a shorter distance; that cars are from 42 to 46 feet in length.

Clearly, the fireman did not see, and in the exercise of reasonable and proper care, could not have seen the peril of the automobile and its passengers in time to stop the train before the impact. He should therefore be eliminated from consideration of the last clear chance doctrine. Now, as to the engineer. He says he was looking ahead but could not see the automobile and gives the reasons why he could not see. But suppose it be said that his reasons are not sufficient, and that in the exercise of proper care he should have seen the automobile, does it then satisfactorily appear that the accident could have been avoided? Clifford Waller and two or three other witnesses introduced on behalf of the plaintiff say that they did not see the east bound train until after the automobile stalled on the track. Clifford says that he was on the track 8 or 9 seconds attempting to start the automobile before he saw the approaching locomotive. Of course, too much emphasis should not be laid on Clifford's estimate of time, either for or against his contention, as nobody under such circumstances would be expected to make an accurate estimate. The speed of the train was estimated at from 20 to 25 miles per hour, that is at from 29.3 to 36.6 feet per second. From a distance of 12 to 15 car lengths from the automobile (516 to 645 feet), being the distance at which the engineer says the view was first open, the train would have reached the crossing, if the speed was undiminished, in from about 14 to 22 seconds. If the automobile was on the track when the engine first came within view it might be said that there was sufficient time and distance for the engineer to have caused the fireman who was operating the engine to stop the train before the crossing was reached. But this pre-supposes that immediately upon seeing the automobile at a distance of 12 to 15 car lengths the engineer would have realized that it was stalled upon the track. We cannot presume that he would have so realized, nor can we say that he should have done so under the circumstances, considering that there was nothing in the physical appearance of the machine to convey the immediate impression that it was in distress. It is analogous to a pedestrian on a track some distance in advance of an approaching train. ''Where an engineer sees an

adult walking on the track in front of an approaching train and knows of no reason like deafness or drunkenness or undue prostration, that prevents him from acting, he is justified in presuming that the pedestrian will step off before the collision occurs.'' *Railroad Co.* v. *Ruffehr*, (Colo.) 69 Pac. 582. The doctrine of last clear chance must be predicated on facts, it cannot be grounded upon pyramided presumptions, and the burden of proving that injury could have been avoided by the party who inflicted it after the peril was discovered or could have been discovered, rests upon him who asserts that proposition. *Shuster* v. *Ry. & Power Co.*, (Va.) 132 S. E. 185.

Two elements must have concurred. There must have been either actual or imputed knowledge on the part of either the engineer or fireman that the automobile was in peril, 45 Cyc. 992, and there must have been an appreciable interval of time between their actual or imputed knowledge of the situation and the collision. *McLeod* v. *Laundry Co.*, 106 W. Va. 361. Assume that the engineer saw the automobile at a distance of 555 to 700 feet. That alone is not enough. Before there can be recovery it must be said that he knew or ought to have known of the peril. The natural presumption in the mind of an engineer upon seeing an automobile on a crossing several hundred feet away would be that it would move off the crossing either forward or backward before the train reached it. He had the right to rely upon the continuing obligation of the occupants of the automobile to observe the approach of the train and to act for their own safety. *Young* v. *Southern Pacific Ry. Co.*, (Cal.) 190 Pac. 36; *Pennsylvania Co.* v. *Hart*, (Ohio) 128 N. E. 142.

> ''If there is nothing in the situation to indicate to an ordinarily prudent person that the person injured either could not reasonably escape from the position of danger, or apparently would not avail himself of the opportunities open to him for so doing, there can be no recovery.'' 45 Corpus Juris, 992.
>
> ''Not only must the defendant have had actual knowledge of the plaintiff's dangerous situation, but he must have been aware also of the plaintiff's

unconsciousness of or inability to avert the peril. The plaintiff's right of recovery exists when "the defendant, after having discovered his peril, having also reasonable ground to believe him unconscious of danger, or unable to avoid it, might himself, by the exercise of ordinary diligence, have prevented the mischief which followed. It is when the engineer or motorman sees that a person 'is apparently placing himself in a position of danger without being aware of the approaching' train or car that 'it is plainly his duty to take cognizance of that fact and avoid injury to him if practicable. · If, on the other hand, the trainmen see a person on or near the track and there is nothing to indicate that he is unconscious of danger from the train, no duty devolves upon them to stop.' '' 20 R. C. L. 143.

Under the estimates of speed and distance most favorable to the contention of the plaintiff, it cannot reasonably be said that more than about 22 seconds elapsed between the instant that the engineer saw or should have seen the automobile on the crossing and the impact. The train was a very heavy one, consisting of a Mallet type engine, 104 feet long, weighing about 275,000 pounds, and of 123 empty cars,—more than a mile in total length. Of course, if at an earlier instant the power had been thrown off and the brakes applied, the train would have slowed down and more time would have elapsed, but ordinary experience and common knowledge convince us that there was not sufficient time for the engineer first to realize that the automobile standing on the crossing was in peril, and, second, to inform the fireman of that fact, and then for the latter to throw off the power and apply the air brakes, and for the momentum of the train to be overcome and the train stopped. Therefore, there was not sufficient basis in fact for the benign and humanitarian doctrine of last clear chance to be invoked and applied.

And, further, if the automobile reached the crossing after the train came in sight, then the time which elapsed between the first opportunity of the enginemen to see the automobile and the crash was probably less than twenty-two seconds, and the reasoning of the paragraph last above would apply *a*

*fortiorari*. On the other hand, if the automobile had become stalled on the track before the line of vision of the engineer became unobstructed by the hill,—that is before the engine reached a point from 555 to 700 feet from the crossing,—then there probably would have been more than twenty-two seconds available for the persons in the automobile to extricate themselves from their danger,—to get out of the automobile if they could not move it. It would seem that in such circumstances if they had been duly apprehensive for their own safety, and had been watching for the approach of a train, they could have seen the pilot of this tremendous engine as it rounded the curve in the distance before it would have been physically possible for either of the enginemen, sitting in the cab well toward the rear of the engine, to have seen the automobile on the crossing. On that basis, their continuing contributory negligence would eliminate application of the doctrine of last chance. 20 Ruling Case Law, 142; 45 Corpus Juris, 993. "One's duty for his own self-protection involves the making of reasonable use of his senses under penalty of forfeiture of recovery for resulting injury." *Nehring* v. *Connecticut Co.*, (Conn.) 84 Atl. 301.

For the reasons above set forth, we reverse the judgment of the trial court, set aside the verdict and remand the case.

*Reversed and remanded.*