JANET ANN WALKER, *Infant, etc. v.* HARRY BEDWINEK

(No. 7618)

Submitted September 12, 1933. Decided September 26, 1933.

*Rummel, Blagg & Stone* and *H. Rummel Anderson,* for plaintiff in error.

*Copenhaver & Boiarsky,* for defendant in error.

LITZ, JUDGE:

Plaintiff, Janet Ann Walker, obtained a verdict and judgment of $6,500.00 against defendant, Harry Bedwinek, for personal injury sustained by her August 24, 1931 (between nine and ten o'clock P. M.), when she was struck by a Ford sedan automobile belonging to Bedwinek and driven by him on a public street in the city of Charleston. At the close of the proof for plaintiff, defendant, without offering any testimony, demurred to the evidence. To the judgment which was entered upon a conditional verdict, defendant prosecutes this writ.

Plaintiff, aged 13, whose home was in Charleston, had, some minutes before the injury, returned to Charleston from a

Girl Scout Camp in Greenbrier County with a number of other girls in a motor bus. The bus parked, facing east, on the south side of Lee Street in front of the City Library for the discharge of passengers and baggage. Plaintiff immediately left the bus, walking west to a drug store on State Street where she telephoned her mother to meet her at the Library Building. On her return, plaintiff proceeded along the walkway on the north side of Lee Street until about opposite the rear of the parked bus, where she left the sidewalk to cross the street. After walking some 23 feet (or about half-way across the street) she was struck and knocked to the pavement by defendant's car, traveling east.

The evidence presenting the situation of the accident is meager. The city block in which the Library Building is located, faces Lee Street 125 feet on the south, and is bounded on the west by Hale Street, connecting with Lee, and on the east by Dickinson Street, intersecting Lee. Lee Street is about 60 feet wide at its junction with Hale, but diminishes in width eastward, to 36 feet at its intersection with Dickinson. It is approximately 46 feet wide in front of the center of the Library Building and some 50 feet at the point of the accident.

Plaintiff, as a witness in her own behalf, stated that before starting across the street, she looked in both directions but saw no car approaching; that the traffic light was red at the corner of Lee and Dickinson Streets; that the street lights were burning; and that she walked at her usual gait to the place where she was struck.

J. L. Guthrie, called by plaintiff, testified that as he was getting into his car, which was parked at the north curb of Lee Street (apparently about opposite the bus), he heard plaintiff scream and defendant's car stop; that he immediately looked in the direction of the accident and saw plaintiff lying beneath the car on her back, between the front wheels, with her head directly under the front axle. He also stated that a taxi was parked parallel with, and about two feet from, the bus. Arch Brown, a city policeman, also called by plaintiff, in relating a conversation he had with defendant a few days after the accident, testified that defendant told him that he (defendant) "was going east on Lee Street near the inter-

section of Hale, and there was a bus parked in front of the Library Building with a lot of children around it; that he was watching the children there and cut away over on the left-hand side of the street to give them plenty of room''; and that plaintiff came across the street from the other (north) side.

Defendant contends (1) that the evidence does not warrant the finding that he was negligent; and (2) that, assuming he was negligent, plaintiff was guilty of contributory negligence as a matter of law.

It appearing that there was nothing to obscure his vision, evidence justifies the conclusion that defendant, by the exercise of reasonable lookout, should have seen plaintiff in time to avoid the accident. The driver of an automobile should look out for pedestrians not only at, but between, street crossings. Huddy Automobile Law (9th Ed.), Vol. 5-6, page 72; 42 C. J. 1037; *Green* v. *Ruffin,* 141 Va. 628, 125 S. E. 742, 127 S. E. 486; *Ulmer* v. *Pistole,* 115 Miss. 485, 76 So. 522. ''As a general rule of law, the driver of an automobile must keep a lookout for pedestrians, whether the pedestrian is crossing the street at a regular crossing or diagonally.'' *Ivy* v. *Marx,* 205 Ala. 60, 87 So. 813. The situation at the time of the accident, as detailed by defendant to Arch Brown, was not such as to relieve him of the duty to observe pedestrians in the street. In *Greenbaum* v. *Costa,* 137 Md. 524, 113 Atl. 79, a motorist was held to have been guilty of negligence in striking a thirteen-year-old pedestrian on a street while veering his car to the left ''apparently'' to avoid a large crowd of children gathered around a truck parked on the right. It was also held in *Halzle* v. *Hargreaves,* 233 Mich. 234, 206 N. W. 356, that an ordinance requiring the driver of a motor vehicle to look back before making a left turn, to ascertain whether it is safe to turn, does not excuse him from watching where he is going or from looking out for pedestrians.

As it does not appear from the evidence that defendant's automobile was in sight at the time plaintiff says she looked, before starting across the street, her testimony should be accepted as true. Then, if she looked before starting, was her failure to look again for the approach of cars as she crossed

the street contributory negligence, as a matter of law? We think not. In *Ritter* v. *Hicks*, 102 W. Va. 541, 135 S. E. 601, where a pedestrian was struck by an automobile while crossing a street (between crossings) at night, it was held that his failure to look for approaching cars after entering the street did not, under the circumstances, constitute contributory negligence as a matter of law. In *Knapp* v. *Barrett*, 216 N. Y. 226, 110 N. E. 428, 429, Judge (now Justice) Cardozo, speaking for the court, said: "A wayfarer is not at liberty to close his eyes in crossing a city street. His duty is to use his eyes, and thus protect himself from danger (*Barker* v. *Savage*, 45 N. Y. 191, 6 Am. Rep. 66). The law does not say how often he must look, or precisely how far, or when or from where. *If, for example, he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again.* The law does not even say that because he sees a wagon approaching, he must stop till it has passed. He may go forward unless it is close upon him; and whether he is negligent in going forward, will be a question for the jury. If he has used his eyes, and has miscalculated the danger, he may still be free from fault." This statement is quoted with approval in the *Ritter* case, with the comment: "To hold otherwise would compel many a pedestrian to long remain 'Standing with reluctant feet where the sidewalk and the roadway meet.'"

The judgment, complained of, is affirmed.

*Affirmed.*