RUBY BOWMAN *v.* THE MONONGAHELA WEST PENN PUBLIC SERVICE COMPANY

(No. 9247)

Submitted May 19, 1942. Decided June 16, 1942.

*Meredith & Bell,* for plaintiff in error.
*Harry Shaw,* for defendant in error.

KENNA, JUDGE:

This action of trespass on the case was instituted in the Circuit Court of Marion County by Ruby Bowman for the purpose of recovering fifteen thousand dollars in damages due to a personal injury received by her when the automobile she was driving on the morning of October 7, 1940, collided with a street car of Monongahela West Penn Public Service Company on Morgantown Avenue in the City of Fairmont. After a trial that lasted a week, the case was submitted to a jury, and to a judgment based upon a verdict for forty-five hundred dollars, the defendant prosecutes this writ of error.

The points of error submitted are eleven in number, but a discussion of the case under the following four distinct topical headings embraces them all: (a) The insufficiency of the plaintiff's proof to establish primary negligence on the part of the defendant; (b) assuming that the proof of the plaintiff is sufficient to go to the jury on the question of defendant's negligence, in any event the plaintiff's testimony shows contributory negligence on her part as a matter of law; (c) the inadmissibility of certain testimony having to do mainly with the defendant's failure to sound a bell in spite of the plaintiff's admission that she was conscious of the approach of the street car when it was a block away, and the repetition of her testimony in chief by way of rebuttal; and (d) the approval of plaintiff's instruction number four relating to the doctrine of last clear chance, which, the defendant contends, was improperly given because the proof does not show an intervening period between the time that the defendant became conscious of, or should have realized, the plaintiff's peril and the moment of actual impact, during which the defendant should have prevented the collision, and that, even assuming that the testimony is sufficient to justify the approval of the instruction, it is then an incorrect statement of the doctrine attempted to be applied.

The testimony covers a large amount of minute detail, much of which we regard unnecessary to recount. The following may be taken as a general outline, having to do only with matters upon which there is no material conflict between the plaintiff's and the defendant's evidence:

Mrs. Ruby Bowman lived with her husband and seven-year-old son in a suburb east of Fairmont called Norwood, and on the morning of the accident, accompanied by their child, had taken Mr. Bowman, an automobile mechanic, to his place of employment in Fairmont. Before leaving for her return to Norwood, where it was her purpose to let her son out at the school he attended, she had stopped in town on a personal errand. Immediately before the collision, she was driving east on Morgantown Avenue at a speed estimated at around sixteen miles an hour.

At and near the scene of the accident, which the jury viewed, Morgantown Avenue is a practically level straight-away for a distance of nineteen hundred fifty feet. Its traveled width between curbs, not including the single track street car rails which are in its middle, is thirty and one-tenth feet. It is admitted that with automobiles parked at the curb, there is insufficient space on either side of the track for a four-wheel vehicle to pass an oncoming street car.

The defendant's street car had left Norwood and was entering Fairmont on Morgantown Avenue traveling west towards the plaintiff's oncoming automobile in charge of a motorman with between two and three years experience, named Ralph A. Davis, the car being number two hundred and ninety, the condition and equipment of which is not seriously questioned. The street car's weight was around thirty thousand pounds, and it was operated by what is called "dead man's control", which, when the throttle is released from pressure, automatically brings the emeregency brake and sand into operation. Several blocks before approaching the place of impact midway between Lemley Street and Arch Street, Davis had stopped the street car at the corner of Vermont Street and Morgantown Avenue, generally known as "Coogle's Corner", and had there picked up a member of what may be termed a reserve squad of motormen who acted in the place of regular motormen who for various reasons failed to report for duty. This motorman, whose name was William Holsberry, had had ten days experience and boarded Davis' car for the purpose of operating it under the scrutiny and advice of a more experienced performer.

After leaving Coogle's Corner, Davis having placed Holsberry "in the driver's seat", they entered a passing switch so that a car leaving Fairmont could go by on the main line. Holsberry then backed the car onto the principal track and drove it several blocks, starting, stopping and passing traffic lights until they had passed the corner of Lemley Street.

In the meantime, the plaintiff had reached the corner

of Arch Street which has dead ends diagonally opposite on Morgantown Avenue, and is the next street west of Lemley and towards Fairmont, a distance of approximately four hundred and fifty feet. The morning was bright and clear, the ground dry and the hour close to eight-thirty. There were between sixteen and eighteen passengers on the street car at the time of the collision.

The rest of the testimony in this record seems to be unduly influenced by two diametrically conflicting versions of the happening itself, and, to some extent, of the physical surroundings.

The plaintiff states that she saw the approaching street car from Arch Street at about the time it reached Lemley Street, as stated a distance of about four hundred fifty feet, and, admitting her familiarity with the traffic difficulties, found on Morgantown Avenue, she continued her course under the belief that in the block she was entering there would be an opportunity to pass. But when she got by Bell's Furniture Company, a store on the south side of Morgantown Avenue directly across from Arch Street on the north, she encountered a line of parked cars on her right that made it necessary for her to drive with the left wheels of her car on the street car track. She states that after she entered the area flanked by the parked automobiles she noticed that the line of parked cars was practically unbroken until it reached a telephone pole a little beyond the far side of Cook's Grocery, a distance of nearly one hundred feet, containing no parking space large enough to enter without backing. The plaintiff's testimony is that the motormen were apparently engaged in a conversation, were not looking or paying attention to the extent that would justify her feeling safe if she stopped, and that consequently, she determined to make an effort to reach the end of the line of parked cars where she could turn into a safety zone next to the curb. When she reached the car and truck parked at and near the telephone pole, she realized that she was going to be struck by the street car, applied her foot brake and emergency so that her car stopped two or three feet be-

fore the street car struck her, as it did by colliding with her front bumper and fender, tearing off her left running board and damaging her left rear fender and bumper. Plaintiff's testimony is that immediately before the collision, Davis suddenly grabbed the control from Holsberry.

There being no error assigned based upon her physical injury, we regard a discussion of it as being unnecessary.

The Bowman car had its left rear bumper caught by a "journal box" under the left front step of the car, resulting in lifting its left rear wheel from the ground, and forcing its right rear against the left front bumper of the last car in the line of parked cars facing the direction in which Mrs. Bowman was traveling, or east.

The version testified to by Davis and Holsberry and at least partially corroborated by the testimony of a truck driver who was immediately behind the street car, and certain passengers, is that soon after the street car passed Lemley Street at a time when Mrs. Bowman's car was still three hundred feet away, the two motormen, both looking directly ahead, noticed the approaching automobile and, being conscious of what might be a dangerous development, Davis relieved Holsberry of the control, shut off the power, allowing the street car to "drift" on a slight down grade, thus slowing it down to a speed of between six and eight miles an hour, to which the street car was held until Mrs. Bowman had passed Bell's Furniture Store. They say that after passing Bell's Furniture Store, Mrs. Bowman turned to the right where there was a considerable break in the line of parked cars, estimated variously by different witnesses at from ninety to one hundred twenty feet, so that her car was altogether off the street car track. When Mrs. Bowman's position of safety was noticed, Davis at once applied power, increasing the speed of the street car to between ten and twelve miles an hour, which the car retained until Davis noticed Mrs. Bowman come out from behind a truck parked in front of Cook's Grocery about fifty feet away from the front of the street car, when he at once shut off the power and applied the emergency brake. Mrs. Bowman did not stop,

but instead attempted to pass the truck and automobile parked on her right, which covered approximately one-half the distance between her and the street car. She succeeded in getting the front of her car turned to the right after it had passed the automobile, but the left front step of the street car caught her car at the left rear fender and carried it forward until its right back fender came in contact with the automobile it had nearly passed.

After the collision, Davis got off the street car, went around Mrs. Bowman's car to its right side, opened the door and inquired of Mrs. Bowman whether either she or her boy had been injured. Mrs. Bowman told him that she did not know, and, according to her statement, asked him why he had not stopped and was told that he, Davis, thought she was going to get out of the way. Mrs. Bowman further testified in reply to a leading question for the purpose of refreshing her memory, that she then accused Davis of not seeing her car on the street, and got no reply. Mrs. Bowman left her car and went into Cook's grocery where she asked the proprietor to 'phone police headquarters, which he promptly did. Davis then 'phoned the street car company's claim agent, who came at once, arriving before the policemen, and, in order to relieve the resulting traffic jam, over Mrs. Bowman's protest, ordered the street car moved, which was done after it was disengaged from the Bowman automobile.

We are of the opinion, viewing this testimony most favorably to the plaintiff and assuming that the jury accorded credibility only to the testimony which would substantially support the plaintiff's version, that there is sufficient proof to sustain a verdict based upon the defendant's primary negligence. If the motormen were engaged in a conversation, and were paying no attention to other vehicles, the presence of which they were required to anticipate, and thus placed the plaintiff in an imminently dangerous position, from which she had no plain way of saving herself, though her car might have been stopped in what she regarded as a dangerous position fifty or more feet before impact occurred, there can be no doubt

of the company's negligence. *Riedel* v. *Traction Co.,* 69 W. Va. 18, 71 S. E. 174; *Prunty* v. *Tyler Traction Co.,* 90 W. Va. 194, 110 S. E. 570; *Humphreys* v. *Charleston Transit Co.,* 122 W. Va. 571, 11 S. E. 2d 745.

As to the plaintiff's contributory negligence, we think that also is a matter which was properly submitted to the jury, since there is a material conflict in the testimony as to the physical surroundings, particularly concerning the line of parked cars on the plaintiff's right, and whether that line was unbroken from Bell's Furniture Company to beyond the telephone pole on the east of Cook's Store, where the collision occurred. If that was in fact a solid line, and if the plaintiff became aware of peril after she had entered what proved to be a position of danger by virtue of the defendant's unanticipated negligence, while from then on her safety might have been better provided for by a different course of conduct, she was required to exercise only a reasonable degree of care under the circumstances with which she was confronted. We, therefore, in the light of the conflicting evidence shown by this record, cannot say that plaintiff was guilty of contributory negligence as a matter of law. Furthermore, to so hold and to base a finding for the defendant thereon would necessarily eliminate the doctrine of last clear chance, which, we believe, under this evidence, would be to encroach upon the function of the jury.

The two questions of evidence that arise under the third heading can be disposed of without difficulty. If the defendant's primary negligence had been the only issue of fact to be submitted, it would have been error to permit the failure to sound a bell after the plaintiff had admittedly become conscious of the the street car's approach to be shown. But since there were also involved the questions of the plaintiff's contributory negligence and the doctrine of last clear chance, the scope of relevant testimony was broadened so as to include the defendant's failure to sound a bell under the circumstances. As to the admission of rebuttal testimony, we see no plain breach of discretion on the part of the trial judge.

It is rather difficult to discuss clearly the application of the doctrine of last clear chance under a set of circumstances the different versions of which differ to the extent that they do in this instance, and that very fact, we believe, justifies our conclusion that there is sufficient substantial testimony to justify an instruction stating correctly the theory of that doctrine. Of course, the extraordinary phase of the occurrence is the conceded fact that the operators of both vehicles were aware of the approach of the other in ample time to have averted the collision had they exercised extreme precaution, which is not the measure of their legal duty. Based upon the plaintiffs version of the occurrence, she was entrapped by a long line of cars parked on her right. When she was entering this area, she states she was entirely unconscious of the danger, and that when she realized her predicament and saw that the motormen were driving the street car in a manner that caused her to believe they had not and would not see her, she was required to either stop her car, put it in reverse and back, or go forward until she reached the end of the line of parked automobiles. In passing, it may be said that we regard it as quite unusual that there is extremely little, if any, evidence showing the condition of the left side of Morgantown Avenue, to which plaintiff might have turned to avoid a collision, had it been open. But plainly, under the plaintiff's testimony, and conceding the possibility of her negligence, she was caught in dangerous surroundings from which there was no certainly safe way of extricating herself. Again emphasizing the fact that we are speaking of testimony justifying the application of the doctrine from the viewpoint most favorable to the plaintiff, we believe that there is sufficient proof to justify a finding that the motormen were entirely unconscious of the plaintiff's presence and danger until too late to avoid injuring her. There can be no doubt that on the plaintiff's theory of proof by the exercise of reasonable care they would have realized her danger in time to have prevented the impact. Of course, in many cases, as here, there are conflicting theories as to the existence

of fact and often a very fine line to be drawn in order to determine the applicable legal principle. In this case, although we are of the opinion that a proper instruction predicated upon the doctrine of last clear chance should have been given, we believe also that an instruction predicated upon the doctrine of concurrent negligence would have been proper, since we cannot determine positively from the proof whether there was an appreciable interval of time between the actual impact and the time when the duty arose to realize the peril of the plaintiff to have avoided the collision, although Davis testified that if he had applied the brakes a few feet further away the accident would not have occurred. We are of the opinion that whether the doctrine of last clear chance was to be applied was a question to be decided by the jury, and, consequently, a proper basis for an instruction.

The doctrine of last clear chance, under our decisions, may be briefly stated to be that if, as a proximate consequence of his own contributory negligence, plaintiff is confronted with an imminent danger of which he is obviously oblivious or from which he plainly cannot extricate himself, it is the duty of the defendant, if conscious of plaintiffs' peril, or if by the exercise of reasonable care he should be so conscious, to exercise reasonable care under the then circumstances to avoid injuring him. *McLeod v. Charleston Laundry Co.,* 106 W. Va 361, 145 S. E. 756. See, also, syllabus five in *Lynch v. Alderton,* 124 W. Va. 446, 20 S. E. 2d 657; *Fielder v. Service Cab Co.,* 122 W. Va. 522, 11 S. E. 2d 115.

Instruction number four, given on behalf of the plaintiff over the specific objection of the defendant, reads as follows:

> "The Court further instructs the jury that the mere negligent act of a person will not excuse negligent injury to her by another, and that if a person negligently places herself in a situation of imminent danger, without being able by the exercise of reasonable care to extricate herself therefrom, and is injured by another, who, by the exercise of reasonable care, could have avoided

such injury, then the negligence of the injured person will not bar recovery; and the jury is further instructed that even if the jury believe from the evidence in this case that the plaintiff, Ruby Bowman, was negligent at and before the time when and place where her automobile was struck by the street car of the defendant, Monongahela West Penn Public Service Company, a corporation, as shown by the evidence, yet, if the jury believe from a preponderance of the evidence that the operator of the defendant's said street car, by the use of reasonable and ordinary care, could have avoided striking the said automobile of the plaintiff, and negligently failed to do so, then the original negligence of the plaintiff, if there was such negligence, will not of itself prevent a recovery by the plaintiff in this action."

It will be at once noticed that the element left out of the instruction is the consciousness of the defendant, or the breach of duty in his unconsciousness of the plaintiff's certain peril. In this matter, we regard the consciousness or unconsciousness of the plaintiff's peril as an especially vital element to which the attention of the jury should have been drawn if they were to be instructed concerning that doctrine.

For the foregoing reasons, the judgment of the Circuit Court of Marion County is reversed, the verdict set aside and a new trial awarded the defendant.

*Judgment reversed; verdict set aside; new trial awarded.*