GENEVIEVE L. BARR, *Admx. etc.*

*v.*

ROBERT F. CURRY

(No. 10424)

Submitted April 22, 1952. Decided June 24, 1952.

Fox, JUDGE, not participating.

*Handlan, Garden, Matthews & Hess,* for plaintiff in error.

*Goodwin, Nesbitt, Spillers & Mead,* for defendant in error.

LOVINS, JUDGE:

This action grows out of the death of Wilbur Barr who was struck by an automobile on August 21, 1950, and fatally injured while on a public road in Brooke County, West Virginia, hereinafter designated as "Route Number 2". Genevieve L. Barr, the wife and administratrix of the estate of Wilbur Barr, plaintiff, instituted this action in the Circuit Court of Ohio County against Robert F. Curry, defendant, the driver of the automobile which struck her husband. A verdict was returned in favor of plaintiff in the sum of $8000.00. After overruling a motion to set aside the verdict and grant the defendant a new trial, the trial court rendered a judgment for the plaintiff for the amount of the verdict.

The defendant, who was engaged in the business of operating machines referred to as "juke boxes" and other machines referred to as "pin ball machines", on the evening of August 21, 1950, went to the home of a lady in

Wheeling where he drank one bottle of beer. Thereafter he and the lady entered defendant's automobile, traveled north on Route Number 2, crossed the Ohio River, and drove to Steubenville, Ohio, where they ate their evening meal at a restaurant. From there they went to the home of a friend, where they stayed some time. Then, they went to the clubroom of the Veterans of Foreign Wars in Follansbee, West Virginia, where one of defendant's machines was located. His purpose in going to the clubroom was to service the machine. After servicing the machine, the defendant drank one beer and had two drinks of whiskey, in the course of about twenty-five or thirty minutes. About five minutes after taking the last drink of whiskey, the defendant and his companion entered the automobile and started driving south on Route Number 2.

The accident occurred on Route Number 2, at a point near the Beech Bottom Plant of the Wheeling Steel Company, where the decedent was employed. At such point, the road extends in a general north and south direction. On the west side of the road the plant where decedent was employed, as well as a parking lot, are located. On the east side, there are a number of buildings, one of which was occupied by a restaurant known as "Tubby's Place" and another by a business operated by Mike Jordan.

A stop light is located about 800 feet south of where the accident occurred. To the north of the point of accident, there are a number of road signs. On one sign are these words: "Signals Ahead"; on another, "Mill Exit"; on another, "25 miles an hour". These signs are located on the west side of the public road and on the right side of a south bound motorist. To the north of the point of accident, about ¼ of a mile, State Route Number 2 is slightly curved. There is some indication that from the point where the decedent was struck, the road has a slight descending grade.

Decedent and three of his fellow employees left their work at about 11 o'clock, their shift having ended, crossed the road from the west to the east side and entered

Tubby's Place. While there, the decedent drank coffee and purchased two loaves of bread, a pie and 6 bottles of beer. He drank no beer, however, while there.

On leaving the restaurant, Pat Galloway and Earl Gray, two of decedent's companions were in front of Jacob Yance, another companion, and the decedent. They walked in a northerly direction along the berm on the east side of the road approximately 75 feet, and all started to cross from the east to the west side of the road, Galloway and Gray being in front, Yance being immediately to their rear and the decedent being behind Yance. They were going to a parking lot situated on the west side of Route Number 2 and to the north of the plant where they were employed, with the intention of entering an automobile owned by Gray and going to their respective homes.

The decedent, while crossing, dropped his package containing the 6 bottles of beer, at or near the center of the highway, most of them breaking when they hit the paved portion of the road. The decedent retrieved some of the unbroken bottles and was attempting to kick broken fragments of glass from the pavement when Yance said to him, "You'd better get off the highway, there's a car coming". At that time the lights of the defendant's automobile were visible approximately ¼ mile to the north and the automobile was moving south. In response to the warning given by Yance, the decedent said, "Just a second until I kick these last few pieces." Decedent thereafter started to walk toward the east side of the road and then, in mid-step, changed direction toward the west side of the road. Decedent was facing to the north and in the general direction from which the automobile was approaching. Immediately after attempting to go to the west side of the road, decedent was struck. According to some of the testimony, his body was hurled 128 feet to the south, although there is testimony that decedent's body came to rest nearer the point of accident.

Gray, one of decedent's companions, intending to assist

the decedent in removing the glass fragments from the pavement, went to a point near the center of Route Number 2, saw the headlights of the defendant's automobile approaching about one-half mile to the north, and being fearful that the automobile would not stop, walked off the road and escaped injury.

The defendant was driving his Ford automobile in a southerly direction. The defendant's companion testified they were traveling 35 miles per hour. The defendant said he was driving 40 miles per hour. Other witnesses testified that the speed of defendant's automobile was 55 or 60 miles an hour.

Defendant admits that he traveled the road frequently, that he was acquainted with the physical situation, the plant of the decedent's employer, the mill exit and other buildings located along the road at the point of the accident. He testified that he did not see the decedent until the automobile was 3 or 4 feet from decedent, although there were lights to the south of the point of the accident which would cause decedent's body to be silhouetted. There is some attempt on the part of the defendant to show that the air was misty and that visibility was impaired by some atmospheric condition. Decedent, when struck, was wearing dark clothes.

The traffic light hereinabove mentioned was burning at the time of the accident and, according to testimony of defendant, the signal indicated that traffic should proceed on Route Number 2.

There is evidence tending to show that there were a number of pedestrians walking along the side of the road to the north of where the accident occurred.

The accident was investigated by a member of the Department of Public Safety who arrived on the scene approximately 50 minutes after decedent was struck. According to the testimony of the investigating officer, who placed the point of accident where the broken glass was found on the pavement, there were skid marks on the road

52 feet in length, and the point where the body of the decedent rested after the accident, as pointed out to the officer, was approximately 128 feet from the point where he was struck.

Immediately after the accident, the decedent's body was removed to a first aid station nearby and from there to a hospital where he died August 27, 1950.

Aside from questions raised relating to the court's charges and instructions given and refused by the trial court, this case presents four questions: (1) Was defendant negligent? (2) Was defendant guilty of wanton and reckless conduct? (3) Was decedent contributorily negligent as a matter of law? and (4) If the defendant was negligent and the decedent's negligence proximately contributed to his death, will the doctrine of last clear chance permit a recovery?

The declaration herein alleges that the defendant committed breaches of the duty he owed decedent, in that he drove his automobile at an unlawful rate of speed; that he exceeded the speed limit of 25 miles per hour where the speed of the automobile was limited to such rate; that he failed to maintain lights on his automobile sufficiently strong to discern substantial objects for a distance of 200 feet; that he operated his automobile unreasonably and carelessly; and that he failed to keep his automobile under control so that he could stop the same within his range of vision.

Indubitably this record shows that the defendant was primarily negligent and that his conduct on the occasion of decedent's fatal injury verged on wantonness and recklessness, although we do not characterize his conduct and acts as wanton and reckless.

The defendant failed to see the three road signs; he failed to control his car; he failed to see the decedent until he was within 3 or 4 feet of him, notwithstanding that the decedent was between the approaching automobile and the flood lights located near the plant of the

Wheeling Steel Company. It is shown that the decedent was wearing dark clothes at the time of the accident. But that fact alone should not have wholly prevented the defendant from seeing decedent's form on the road, backgrounded as he was by the flood lights of the Wheeling Steel Company plant. Moreover, the defendant was approaching a traffic light.

We do not think that defendant's conduct and acts amounted to wanton, reckless and willful conduct. " 'Wilfulness or wantonness imports premeditation or knowledge and consciousness that injury is likely to result from the act done or from the omission to act. Wilful, malicious, or intentional misconduct is not, properly speaking, within the meaning of the term "negligence". Negligence and wilfulness are mutually exclusive terms which imply radically different mental states. "Negligence" conveys the idea of inadvertence as distinguished from premeditation or formed intention. An act into which knowledge of danger and wilfulness enter is not negligence of any degree, but is wilful misconduct * * *'." *Stone* v. *Rudolph*, 127 W. Va. 335, 32 S. E. 2d 742.

The decedent as a pedestrian and the defendant as the driver of the motor vehicle had "mutual, equal and co-ordinate" rights to the use of the public road, "except as varied by the nature of the appliance or mode of travel employed". And so long as such rights were observed by each, neither would be liable for injury by use of the highway. *Deputy* v. *Kimmell*, 73 W. Va. 595, 80 S. E. 919; *Ritter* v. *Hicks*, 102 W. Va. 541, 135 S. E. 601; *Beane* v. *Keyser*, 103 W. Va. 248, 254, 137 S. E. 898.

The decedent and the defendant each owed a mutual duty to avoid injuring each other and were required to exercise the care required of a reasonably prudent man in the same circumstances. *Deputy* v. *Kimmell, supra*. The defendant, because of the nature of the vehicle he was operating, was charged with a greater degree of care than was the decedent. *Deputy* v. *Kimmell, supra*. The decedent was not required to keep a constant lookout but he was bound to appraise the situation with reference to

the dangerous approach of the automobile. *Deputy* v. *Kimmell, supra; Ritter* v. *Hicks, supra.* A pedestrian may not close his eyes in using a road but it is his duty to use them and protect himself against danger. *Walker* v. *Bedwinek,* 114 W. Va. 100, 103, 170 S. E. 908. If decedent failed to anticipate lack of care on the part of the defendant, such failure did not constitute contributory negligence. *Deputy* v. *Kimmell, supra; Ritter* v. *Hicks, supra; Sewell* v. *Lawson,* 115 W. Va. 527, 530, 177 S. E. 293. See *Fielder* v. *Cab Company,* 122 W. Va. 522, 11 S. E. 2d 115.

The evidence in this case is without material or substantial conflict. Consideration of the conduct of defendant can only lead to one reasonable conclusion: that he was guilty of negligence in operating his automobile at an excessive rate of speed, without sufficient headlights and by ignoring the warning signs which were admittedly located along Route Number 2, and also ignoring the fact that pedestrians were using the road. The mill exit was very likely to be used by the Wheeling Steel Company's employees. Admittedly, the defendant knew these facts. Notwithstanding such knowledge, he approached the scene of the accident at an unlawful rate of speed, and was evidently not keeping a proper lookout. Defendant attempts to explain that his failure to see the decedent was because the decedent was wearing dark clothes at the time of the accident. That condition should not have wholly prevented defendant from seeing decedent at the time of accident.

The decedent, having been warned of the approach of the automobile, failed to act properly on such warning. So far as is disclosed by the record, there is nothing to show that the decedent was prevented from walking off the road and extricating himself from the dangerous situation, since Gray, one of his companions, in similar circumstances, actually removed himself from the dangerous situation by walking off the road.

It is a general rule that the question of negligence and contributory negligence are to be resolved by a jury when the evidence is conflicting or when the evidence is without

conflict and. is such that reasonable men may draw different conclusions from the facts established by the evidence. *Yuncke* v. *Welker,* 128 W. Va. 299, 307, 36 S. E. 2d 410; *Taylor* v. *Huntington,* 126 W. Va. 732, 30 S. E. 2d 14; *Wright* v. *Valan,* 130 W. Va. 466, 43 S. E. 2d 364; *McLeod* v. *Laundry,* 106 W. Va. 361, 145 S. E. 756. See *Thorn* v. *Addison Bros.,* 119 W. Va. 479, 483, 194 S. E. 771; *Chambers* v. *Power Co.,* 93 W. Va. 598, 117 S. E. 480; *Jaggie* v. *Colliery Co.,* 75 W. Va. 370, 84 S. E. 941; *Ewing* v. *Lanark Fuel Co.,* 65 W. Va. 726, 65 S. E. 200. But if the facts are such that only one conclusion can be drawn by reasonable men it becomes a question of law for the court. *Raines* v. *Ches. & O. R'y.,* 39 W. Va. 50, 19 S. E. 565. Likewise, the question of contributory negligence can be determined by the court in a similar situation. *Hanley* v. *Huntington,* 37 W. Va. 578, 16 S. E. 807.

As hereinabove noted, there is no conflict in the controlling facts shown in the case at bar. Nor can reasonable men form a rational opinion other than that the defendant was negligent, that the decedent was contributorily negligent, and that the negligence of both was the proximate cause of the fatal injury inflicted on the decedent. We therefore hold that the defendant was primarily negligent as a matter of law, and that the decedent was contributorily negligent as a matter of law. *Slater* v. *Shirkey,* 122 W. Va. 271, 8 S. E. 2d 897.

A person whose negligence proximately contributes to his injury cannot recover and if death ensues, a recovery cannot be had by his personal representative.

There are exceptions to such rule. Contributory negligence is not available as a defense in an action wherein it is established that a defendant is guilty of wanton and wilful conduct, from which plaintiff suffers an injury. *Stone* v. *Rudolph, supra.* Wanton and wilful conduct is not shown in the instant case and hence that exception has no application.

Another exception is stated in the first point of the syllabus of *Smith* v. *Gould,* 110 W. Va. 579, 159 S. E. 53 read-

ing as follows: "The last clear chance doctrine is properly extended to a case where an automobilist, by reason of failure by him in his plain duty to maintain a lookout for the persons and property of others on the highway, commensurate with the danger indicated by attendant facts and surrounding circumstances known to him, and which are such as to have put him on the alert, causes injury to another (though such other was himself concurrently negligent), where the peril should have been seen and comprehended by the automobilist and the injury avoided in the exercise of reasonable care commensurate with the situation. *Such case constitutes an exception to the general rule which precludes recovery by a plaintiff whose negligence has concurred with the defendant's.*" [Emphasis supplied.]

The syllabus point just quoted from *Smith* v. *Gould, supra,* was modified by the holding of this court in *Meyn* v. *Auto Co.,* 118 W. Va. 545, 191 S. E. 558, wherein this Court held that the last sentence in the point of such syllabus should be taken to mean that a "negligent plaintiff, oblivious of impending danger, may nevertheless recover for injuries where the defendant knew of the plaintiff's situation, and, under the circumstances, in the exercise of reasonable care, should have realized the plaintiff's peril, and, upon such realization, could have avoided the injury."

Law writers and judges have discussed at some length the different phases of the doctrine of last clear chance. The doctrine generally rests on four factual situations: (1) Where the danger was actually discovered by the defendant, and the injured person was physically unable to escape the danger; (2) Where the danger was actually discovered by the defendant, but the injured person was physically able to escape the danger; (3) Where the danger was not actually discovered by the defendant but should have been discovered by him, and the injured person was physically unable to escape the danger; (4) Where the danger was not actually discovered by the defendant but should have been discovered by him, and the injured

person was physically able to escape. Annotations, 92 A. L. R. 47; 119 A. L. R. 1041; 171 A. L. R. 365, where the numerous authorities are cited, discussed and analyzed.

For variant applications of the doctrine of last clear chance, see cases decided by this court. *Lynch* v. *Alderton,* 124 W. Va. 446, 20 S. E. 2d 657; *Bowman* v. *Monongahela Co.,* 124 W. Va. 504, 21 S. E. 2d 148; *Milby* v. *Diggs,* 118 W. Va. 56, 189 S. E. 107; *Meyn* v. *Auto Co., supra; Juergens* v. *Front,* 111 W. Va. 670, 163 S. E. 618; *Emery* v. *Monongahela,* 111 W. Va. 699, 163 S. E. 620; *McLeod* v. *Laundry, supra.*

Though the case of *Waller* v. *Railway Co.,* 108 W. Va. 576, 152 S. E. 13, involved a railway crossing accident, a stalled motor vehicle being struck by a railway train, the facts in that case are somewhat similar in principle to the facts of the instant case. In the *Waller* case, the injured person could have abandoned the stalled automobile but failed to do so after having sufficient time and opportunity to avoid the accident. It was there held that the personal representative of decedent could not recover.

The holding of this court in *Meyn* v. *Auto, supra,* materially modified the former opinion of this court in Smith v. Gould, supra, so that we think that the law in this jurisdiction is now such that where the danger to an injured person was not actually known by the defendant but ought to have been, and the injured person knowing of his peril was physically able to escape and failed to do so, there can be no recovery by such injured person or, if deceased, by his personal representative. See Harris Motor Lines v. Green (Va.), 37 S. E. 2d 4.

The decedent in the instant case was warned, and we must assume that had he immediately acted upon the warning, he would have avoided his fatal injury. This case comes within the fourth category hereinabove mentioned and hence the plaintiff is barred of a recovery.

**It was error for the trial court to refuse the peremptory instructions offered by the defendant.**

There are numerous points of error assigned with ref-

erence to the charges 1 and 2, given by the trial court, and the refusal of other instructions offered by the defendant and refused. What we have said in this opinion applies to many of those instructions. It would serve no useful purpose and unduly prolong this opinion to discuss the assignments of error based on the charges of the court given and the refusal of instructions offered by the defendant.

For the reasons stated, the judgment of the circuit court of Ohio County is reversed, the verdict of the jury set aside and a new trial awarded to the defendant.

. We cannot say from this record whether the plaintiff can better her case on another trial, and therefore we remand the action for a new trial in accordance with the principles of this opinion. Since there was no demurrer to the evidence, we do not apply the rule announced in *Koblegard Co. v. Maxwell,* 127 W. Va. 630, 34 S. E. 2d 116.

<div align="right">

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*