# CHARLESTON.

AMERICAN RAILWAY EXPRESS COMPANY *v.* THEODORE ROGERS.

Submitted March 6, 1923.    Decided March 13, 1923.

1.  TRIAL—*Instruction That Truck Driver Not Liable for Injuries Unless Negligent Held Erroneous in View of Evidence Tending to Show Negligence.* ·

    In an action for injuries to plaintiff's horse from the impact of defendant's motor truck, which the evidence tends to show was due to the negligence of defendant, either in failing to equip his truck with adequate brakes in good working order and sufficient to control the same when in use, and an adequate horn or other signaling device, sufficient under all conditions to give timely warning of its approach, · as required by sec. 124, chap. 39, Acts 1919, or to his failure properly to operate said truck with the appliances at hand; it is improper to instruct the jury that the defendant is not liable unless the injury complained of was caused by his "negligent operation of the truck."   (p. 289).

2.  SAME—*Instruction That Injury by Truck Due to Inevitable Accident Where Evidence Tended to Show Negligence on the part of Defendant Held Erroneous.*

    It is also improper, in such case, to give an instruction at the instance of defendant upon the theory that such injury was the result of inevitable accident.   (p. 289).

Error to Circuit Court, Taylor County.

Action by the American Railway Express Company against Theodore Rogers.   From a judgment for defendant, plaintiff brings error.

*Reversed and remanded.*

*Robinson, Warder & Robinson,* for plaintiffs in error.

LITZ, JUDGE:

Plaintiff complains of judgment of the circuit court of Taylor county entered on the verdict of the jury in favor of defendant in an action on appeal from the justice for damages sustained on account of injury to its horse resulting from alleged negligence of defendant.

On October 29th, 1919, while plaintiff's servant was driving its horse in an express delivery wagon down St. Marys Street, and starting to turn left into Latrobe Street, which connects with St. Marys Street, in the city of Grafton, the defendant approached from the rear without warning, and drove his two-ton capacity truck, weighing about 5,500 pounds, into the horse and wagon, striking the left front wheel of the wagon and breaking one or both of the horse's front legs so that it was necessary to have it killed. The truck carried the horse and wagon about thirty feet, running across Latrobe Street and tearing down an iron guard rail on a wall. It stopped with its front wheels hanging over the wall and the rear wheels on the sidewalk. The wagon was canvas covered with curtains at the side and back. The side curtains were down, but the back one was up so the driver could see to the rear.

Defendant admits he had taken off the right brake-shoe of his truck, in order to use a chain on the wheel, and that the foot brake in this condition had no effect on the right rear wheel. When the truck had been removed from the wall, immediately after the collision, it could not be controlled by the use of both the foot and emergency brakes, although neither appears to have been weakened or disturbed in the collision. The mechanic who tested and repaired both brakes at this time says the break-shoe was off the right rear wheel and the lining in the left brake was so worn that the foot-brake did not hold. He also states that the emergency brake was ineffective. The truck had no horn or other signaling device except an exhaust whistle, which cannot be operated except when the engine is running. It is dead when the engine is cut off, going down grade.

The defendant says that while he was coming down St. Marys Street, which is "pretty steep," his truck "got away" from him; that he "didn't know what was wrong, the gas feed must have caught and put on the power." He seemed to think the engine must have been pulling because the brakes would not stop nor check the truck; but he is evidently mistaken in this. If the engine had been runnig the exhaust

whistle would have been in use to warn the driver of the wagon. But suppose the collision was caused, not on account of defective brakes, but by reason of the gasoline feed having caught, as defendant argues; he should have avoided the collision by cutting off the electric power at the switch or disconnecting the engine by releasing the clutch, either of which requires only a moment's time. The driver of the wagon testifies there was about eight feet on his left,—the way the truck traveled,—for it to pass.

The plaintiff complains of misdirection of the jury by the trial court in three instructions given at the instance of defendant. The first of these instructions tells the jury that the defendant is not liable unless the injury complained of was due to his "negligent operation" of the truck. It is contended that this instruction is erroneous because it relieves the defendant from liability for negligence in failing to provide his truck with adequate brakes in good working order and sufficient to control the same when in use, and an adequate signaling device sufficient under all conditions to give timely warning of its approach, as required by statute. We agree. It is not sufficient answer to this criticism that the jury might have construed "negligent operation" as including negligent driving and inadequate and ineffective appliances. It is not reasonable to assume that the jury so understood.

Sec. 124, Chap. 39, Acts 1919, which was the statute law in force at the time of the injury complained of, required that every motor vehicle operated or driven upon the public highways of this State should be provided with adequate brakes in good working order and sufficient to control such vehicle when same was in use; and an adequate horn or other device for signaling, sufficient under all conditions to give timely warning of the approach of such vehicle.

The second of these instructions states that the plaintiff as a deliverer and carrier of expressage on the public streets or highways with a horse and wagon, is presumed to have taken upon itself all the risks necessarily incident to the mode of travel thereon; and that the defendant is not liable

for the injury to plaintiff's horse if the same was the result of an inevitable accident, without fault on the part of defendant.

Under the third instruction the jury are told that if the circumstances of the accident indicate that it may have been unavoidable, notwithstanding reasonable and proper care, plaintiff cannot recover without showing that the defendant has violated a duty incumbent upon him from which the injury followed in natural sequence.

Neither of these instructions is applicable to the facts. The evidence does not justify an instruction on the theory of inevitable accident, as the injury seems very clearly to have resulted from defendant's negligence in failing to equip his truck with adequate appliances in good repair, or properly to operate the same with the means at hand.

The defendant would excuse his failure to stop the engine from pulling, by disengaging the gears or cutting off the electric current, with the idea that he was confused and did the best he could.

"No one should drive an automobile amid the dangers likely to be encountered on the modern highway who is not reasonably steady of nerve, quick in forming an opinion, and calm in executing a design." Huddy on Automobiles (6th Ed.), Sec. 285.

As already observed, either the brakes of defendant's truck were defective, or he was negligent in failing to cut off or disconnect the power. But assuming that the brakes were not defective, and that defendant is excused for his failure to use the means at hand to avoid the collision, he was nevertheless guilty of negligence in failing to have his truck properly equipped with a horn or other signaling device with which to give proper warning to plaintiff's driver of its approach. According to the defendant's testimony, the collision would have been avoided but for the attempt by the driver of the wagon to go into Latrobe street on his left just at the time of the collision, so that the evidence is practically conclusive that if the defendant's truck had been equipped with adequate signaling device, and such device used so as

to give the driver of the wagon proper warning of the truck's approach, he would have kept to the right, and defendant passed in safety to the horse and. wagon.

From the defendant's testimony:

"Q. If he had stopped his horse at the time you hollered state whether you would have struck him?

"A. No, sir, I would not have hurt the horse if he had stopped when I hollered, that would have give me room to went through.

"Q. State, then, what you did, Mr. Rogers, in order to get around Mr. Marquess after you hollered?

"A. I seen there was no other way only to go on the left hand side of him, of course I tried to make it around, he was going a little fast and ran up in my way, he never checked none."

One cannot escape liability for the negligent operation of an automobile on the ground that he acted in an emergency, when it appears that the emergency was created by his own negligence; or if by the exercise of reasonable care he might have avoided the injury notwithstanding the emergency. Huddy on Automobiles (6th Ed.) Sec. 285.

The defendant claims that he "hollered" just before the collision, but there is nothing to show that the driver of the wagon heard him or would have known what was meant.

"One who operates in the streets of a city such a dangerous instrumentality as an automobile, is bound to take notice that he may be called upon to make emergency stops, and it is negligence on his part not to keep the automobile in such condition that such stops are possible." *Allen* v. *Shultz,* 107 Wash. 393, 181 Pac. 916.

"The driver of a motor vehicle should exercise such care in respect to speed, warning of approach and management of the car as will enable him to anticipate and avoid collisions which the nature of the machine and the locality may reasonably suggest likely to occur in the absence of such precautions." *Deputy* v. *Kimmell,* 73 W. Va. 595.

For the foregoing reasons, we reverse the judgment of the

circuit court, set aside the verdict of the jury, and award to the plaintiff a new trial.

                                   *Reversed and remanded.*