# CHARLESTON.

J. M. CHANEY, *Administrator, v.* MRS. M. E. MOORE

(No. 5538)

Submitted April 27, 1926.    Decided May 11, 1926.

1. INSTRUCTIONS—*Instructions to Jury Should State Law Applicable to Particular Facts Which Evidence in Case Tends to Prove and With Reference Thereto, and Not Mere Abstract Propositions of Law, and if Not so Stated, and for That Reason Instructions Are Misleading, the Error May Constitute Grounds for Reversal.*

    Instructions to the jury should state the law applicable to the particular facts which the evidence in the case tends to prove and with reference thereto, and not mere abstract propositions of law, and if not so stated, and for that reason the instructions are misleading, the error may constitute grounds for reversal.   (p. 626.)

2. SAME—*Though a Proposition of Law Applicable to Facts Which Evidence Tends to Prove May be Given to Jury in One Instruction, Court Should Not Deny Party Relying Thereon Another Instruction Covering Same Subject But Which is Intended and Does Define With Greater Particularity and Clearness Rights of Party Depending Thereon.*

    Though a proposition of law applicable to the facts which the evidence tends to prove may be given to the jury in one instruction, the court should not deny the party relying thereon another instruction covering the same subject but which is intended to and does define with greater particularity and clearness the rights of the party depending thereon. (p. 626.)

3. AUTOMOBILE—*Operator of Automobile on Public Road Bound to Observe Extraordinary Conditions Existing Along the Way, When Warned by Sign and Otherwise That Workmen Are Engaged Ahead Repairing Road, He Must Sound Horn, Approach and Attempt to Pass Place Where Workmen Are so Engaged at Such Rate of Speed and at All Times Have Car Under Such Control as to Avoid Injury to Workmen so Engaged, if He Would Avoid Liability.*

    The operator of an automobile on the public road is bound to observe extraordinary conditions existing along the way, and when warned by a sign and otherwise that workmen are engaged ahead in repairing the road, he must sound his horn

and approach and attempt to pass the place where the workmen are so employed at such rate of speed and at all times have his car under such control as to avoid injuring a workman so engaged, if he would avoid liability for injuries inflicted by his failure to observe such due care.   (p. 630.)

4   SAME—*In Cases of Such Extraordinary Hazard and Danger Rule of Reasonable Care Applicable in Other Cases Incomplete; Greater Degree of Care Should be Enforced, and Workman so at Work on Public Road Has Right to Rely on That Degree of Care by Operators With Contributory Negligence for Failure to Observe Negligence of Defendant in approaching him.*

In cases of such extraordinary hazard and danger the rule of reasonable care applicable in other cases is incomplete: a greater degree of care should be enforced, and a workman so at work on the public road has the right to rely on that degree of care by operators thereon which will protect him from injury, and he will not be charged with contributory negligence for failure to observe the negligence of the defendant in approaching him.   (p. 628.)

5.  SAME—*Driver of Automobile so Negligently Operating Car Upon Public Road Will Not be Excused from Liability for His Negligence in Approaching Workmen Engaged in Road Repairing if His Negligence Has Created Emergency Confronting Him.*

Nor will the driver of an automobile so negligently operating his car upon the public road be excused from liability for his negligence in approaching workmen engaged in repairing the road because of a sudden emergency if his negligent approach has created the emergency confronting him.   (p. 631.)

HATCHER, JUDGE, absent.

Error to Circuit Court, Kanawha County.

Action by J. M. Chaney, Administrator, against Mrs. M. E. Moore.   Judgment for plaintiff.   Defendant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*A. J. Barnhart* and *B. J. Pettigrew,* for plaintiff in error.

*Brown, Jackson & Knight,* and *Thos. B. Jackson,* for defendant in error.

MILLER, JUDGE:

This is an action for the alleged wrongful death of plaintiff's decedent, a boy about fourteen years of age, the result of the alleged negligence of defendant in the operation of her automobile on the James River and Kanawha turnpike, east of the town of Hurricane, in Putnam County, near the place where the deceased, with other workmen, was engaged in removing a slide and dumping the earth over the shoulder of the road about a thousand feet west of the slide, and in repairing the road.

On the trial, upon a plea of not guilty, the jury found for the defendant, and the case is now before us upon a writ of error awarded the plaintiff for the alleged errors of the trial court committed on the trial before the jury.

The facts disclosed by the evidence are that the deceased, Morris Chapman, was substituting for another boy regularly employed by the foreman of the state road commission, then engaged in removing the slide and dumping the dirt over the bank or shoulder of the road, as already stated. Four or five men were employed in the work. At the time of the accident, Thompson, the foreman, had driven a Ford truck with a load of dirt from the place of the slide to the place of the dump, and deceased and another workman, Martin, had ridden along on the truck, Martin on the right side, and deceased on the left or south side. The truck had arrived at a point nearly opposite the dumping place, and Thompson was waiting for a convenient opportunity in the traffic to back up across the road to dump his load. Martin had alighted and gone across the road, and was standing there ready to assist in directing Thompson, and watching the truck and the traffic, and to block the wheels. Chapman followed after him. The left wheels of the truck, according to the testimony of Thompson and others, were two or two and a half feet, or half the width of the truck, over on the hard surface of the road, the right wheels resting on the north shoulder thereof. The hard surface of the road at this point was from sixteen to seventeen feet wide, with shoulders on each side; and Thompson says

that there was practically room enough between his truck and the edge of the hard surface on the opposite side for two cars to pass. Thompson swears that Chapman did not leap from the truck in front of the defendant's car, as she and her husband, riding with her, said, but that he stepped from the truck and was in the act of walking across to the opposite side of the road when run over by defendant's car and killed. Martin did not see Chapman get off the truck, but did observe him walking across the road before he was struck, and says that he lacked but a few steps of being across before he was struck, going over to assist in unloading the truck, and that he saw the car just before it struck the deceased. He could not say what the rate of speed was, but his best judgment was that the car was going about 50 to 60 miles per hour. The marks on the road, measured by Thompson after the accident, showed that the car skidded about 90 feet, and the skid marks showed the brakes had been applied 15 to 17 feet east of the point where the car first hit deceased. The evidence leaves no room for doubt that when struck deceased was about on the south side of the hard surface, where the glass out of the left headlight was found, and along which the body was dragged under the left wheels for a distance of from fifty to seventy feet, according to the witnesses on both sides of the case. As measured by Thompson the skid marks made by the defendant's right wheels were about six feet from the left side of the truck.

Just east of the slide the evidence shows there was a danger sign in red letters placed on the shoulder near the hard surface of the road, reading substantially as follows: "Danger. Drive Carefully. Men Working Ahead. Road Under Repairs." Mrs. Moore says she saw and heeded this warning by slowing down her car, but admits a speed of from twenty to twenty-five miles per hour when she struck and killed Chapman. She says that according to her best recollection, she sounded her horn before reaching the truck. Thompson and others present swear that they heard no horn blown. Thompson on the truck says he could see back a distance of from 1,000 to 1,200 feet, but saw no car approaching as he made ready to back his truck to make the dump. He says, it is true, that

he was looking back over his right shoulder, which did not give him a clear view of the whole distance between the slide and the dumping place, but he heard no horn and saw no machine approaching. Martin,. who had gotten across the road, and was there, neither saw nor heard defendant's car until just before it struck Chapman. Some expert evidence was introduced by plaintiff with reference to some experience tables tending to show that a car of the character of defendant's, and even of greater weight, traveling at the rate of twenty-five miles per hour, could be stopped within 15 to 18 feet by simply applying the foot brake, and from 3 to 4 feet less by applying the emergency brake also, or within 10 to 12 feet. All these uncontroverted facts seem to indicate clearly a high rate of speed, too high entirely for safety under the circumstances, and in the face of the warning given, and from which the jury were not justified in excusing defendant from negligence. The circumstances were all extraordinary, not of the ordinary kind attending travelers on the public highway, and called for a high degree of care on the part of defendant, as we shall endeavor to show in considering the instructions given and refused, soon to follow.

The first point of error assigned and relied on for reversal is the striking out of a part of the testimony of plaintiff's witness Kinder. Kinder was one of the workmen along with Thompson, Martin and Chapman, engaged at the time of the accident in repairing the road. He was at the place of the slide, and was at the scene of the accident in three or four minutes afterwards. His testimony related mainly to skid marks of the defendant's car, and the evidences upon the ground of the dragging of deceased's body under the left wheels and along the south edge of the hard surface of the road, and the distance of the skid marks east and west from the point of impact, measured from the broken glass on the road. He first swore that he knew approximately the point on the road where the deceased was struck by the defendant's car; after which he was asked, "How far from that point did these skid marks continue?" and answered, "About 75 feet" towards "Huntington", and "about 17 feet" towards .

"Charleston." Defendant was traveling from Charleston towards Huntington at the time of the accident. On defendant's motion the court struck out this evidence, and plaintiff excepted. We think this evidence was competent, and pertinent to two questions involved, namely, (1) as to the position on the road where deceased was struck, and, (2) as to the rate of speed defendant was driving at the time. But as immediately afterwards the witness was permitted to testify that from the place where he found the broken glass the skid marks extended backwards the distance of about 15 feet, and that the marks of the left wheels extended along the south edge of the road westward, and the fact that Thompson and others were permitted to testify as to the length and location of these skid marks, afore and aft of the point Chapman was struck, we do not think this error in the ruling of the trial court was prejudicial to plaintiff's case.

We will next dispose of the error assigned respecting plaintiff's instructions to the jury. Of those requested the court gave numbers 1, 3-A, and 5, but refused numbers 2, 2-A, 3, 4, and 6. Those refused, with the exception of number 3, to be hereinafter discussed, while perhaps embodying correct abstract propositions of law, were rightfully rejected, because in their abstract form they were either inapplicable to the facts or were calculated to mislead the jury on the law of the case. Again we reaffirm the oft repeated proposition, that instructions should state the law as applicable to the particular facts which the evidence in the case tends to prove, and not mere abstract propositions of law. See the great array of decisions of this court cited in 3 Cum. Sup. Enc. Dig. Va. & W. Va. Rep. p. 743. While not generally regarded as constituting reversible error, such instructions, if misleading, should be so regarded. *Frank* v. *Monongahela Valley Traction Company,* 75 W. Va. 364.

Plaintiff's instructions numbers 1, 3-A, and 5, practically covered plaintiff's theory of the case, unless it was number 5, not so fully covering the subject as number 3, rejected. Instruction number 1 told the jury substantially that if they should find from a preponderance of the evidence that Chap-

man was lawfully upon the highway at the time and place indicated, and was traveling from the north to the south side thereof, without negligence on his part, and that defendant was then and there operating an automobile thereon, traveling in a westerly direction, and was not then and there exercising due and reasonable care, under the circumstances of the case, and struck the deceased on the left or south side of the highway with her automobile, and as a direct result thereof said Chapman immediately or shortly thereafter died, and that the proximate cause of his death was the careless and negligent conduct of defendant in the operation of her car, then the jury might find for plaintiff such sum as they should find from all the evidence he was entitled to recover, not exceeding the sum sued for. And number 3-A told the jury that the mere fact of negligence on the part of Chapman will not excuse the infliction of injury upon him, if by due care and caution on the part of the defendant such injury could reasonably have been avoided. Instruction number 5 told the jury that a person lawfully on the public highway may rely on the exercise of reasonable care by drivers of automobiles to avoid injury, and that the deceased, Chapman, in attempting to and in crossing the highway was not required to continuously look or listen for the approach of automobiles thereon, and that if the jury believe from the evidence that defendant was operating her automobile on said highway in a careless and negligent manner, and that the direct and proximate cause of his injury was such careless and negligent conduct on her part, and deceased did not contribute by his negligence to his negligence to his injury, then the jury might find for the plaintiff.

Plaintiff's instruction number 3, refused, was intended to cover the same subject as number 5, but being the first proposed was intended to define with more particularity and clearness the rights of a person at work on the highway with reference to his duty as to lookout and listening for approaching cars, and his right to rely on the exercise of reasonable care by operators of cars thereon. And it proposed to have the jury told that failure to anticipate omission of this duty

will not render plaintiff guilty of negligence upon penalty if he fails to do so and is injured thereby his own negligence will defeat recovery of damages sustained, and that if they found Chapman left the truck in question and started across the road as claimed, he had the right to rely on the exercise of reasonable care on the part of defendant in the operation of her car, without losing his right to recover damages sustained by her negligence. We are of opinion that though not very skilfully drawn, this instruction substantially covers the law applicable to the case, and should have been given to the jury. The contention of the defendant, besides insisting that the subject is properly and fully covered in instructions numbers 1 and 5, is that it is too broad in its statement that one about to cross a public road is not bound to be continuously on the lookout for approaching vehicles. As to travelers in general this criticism may not be wholly unwarranted, but the proposition is nevertheless true, that operators of automobiles are not excused from being on their guard, and to exercise that reasonable degree of care required by the circumstances of each case. In the case before us, as already noted, the circumstances were extraordinary. Chapman belonged to a company of workmen upon the public road, employed in trying to repair it and render it safe; the truck with which he was employed was in the act of backing up to dump its load, which could be seen by defendant, if attending to her duties, and the conditions present were a warning to her to have her car under absolute control so as to avoid just what there was danger of doing where workers were thus engaged. The rule stated in the instruction and application to decedent is fully supported by our case of *Deputy* v. *Kimmell,* 73 W. Va. 595. That case, very pertinently to the case at hand, recognizes and applies the rule that more than ordinary caution is required in operating automobiles where the conditions are extraordinary and require greater caution than is usually demanded, such as intersections of streets and places where roads are being repaired; point three of the syllabus being: ''Because of the character of the vehicle and the unusual dangers incident to its use, a greater degree of care

is required of the operator of an automobile, while on the public highway, and especially at street crossings, than is required of persons using the ordinary or less dangerous instruments of travel. He should exercise such care in respect to speed, warnings of approach and the management of his car as will enable him to anticipate and avoid collisions which the nature of the machine and the locality may reasonably suggest likely to occur in the absence of such precaution.'' And supporting this proposition we cite Huddy on Automobiles, (6th ed.) §422, and *Truman* v. *Wink-O Products Co.*, 96 W. Va. 256, 258.

It remains to dispose of the points of error relied or relating to defendant's instructions numbers 2, 4, 8, and 11. By number 2 the court told the jury substantially that the mere happening of this accident was of itself no evidence of negligence; that there must be affirmative and preponderating proof of negligence showing more than the mere probability of a negligent act before the plaintiff could recover, and further, that the burden was upon plaintiff to prove by a preponderance of the evidence the negligence charged in the declaration. We are of opinion that this instruction, as applicable to the case at bar, was bad, as said, plaintiff's case was not that of an ordinary traveler on the highway. He was a workman on the road, under the protection of the law and of this warning sign posted on the road, and under conditions of which defendant was bound to take notice. "Under such conditions," says *Deputy* v. *Kimmell*, supra, and Huddy on Automobiles, §422, "reasonable prudence on the part of the driver of the machine would seem to require that he have his car under control so that he can avoid the workman if the latter does not notice his approach, and, in the case of a collision, he may be charged with negligence. And the driver may be deemed guilty of negligence if he fails to give any warning of his approach." Here Mrs. Moore could not say she had sounded her horn, and the other witnesses to the tragedy heard none.

Instruction number 4 told the jury that the defendant owed the deceased *only* the duty of exercising reasonable or or-

dinary care to avoid the collision. This instruction, we think, is also out of harmony with the law applicable to workmen engaged in repairing roads.

Instruction number 8 was as follows: The court instructs the jury that if they believe from the evidence that plaintiff's intestate, Morris Chapman, was guilty of any negligence whatsoever which contributed directly or proximately to his death, then they shall find for the defendant, even though they believe from the evidence that defendant, Mrs. M. E. Moore, was operating her automobile in a negligent manner or at an unlawful rate of speed." Again we say that while this instruction may state the law applicable to contributory negligence generally, it is not in all respects applicable to the case of workmen on the public highways. In this case the defendant should not be excused from liability for negligence on her part, though she may have been, as she claims, confronted by a sudden emergency. By operating her car at a dangerous rate of speed around the truck and the workmen on the road she created the emergency and inflicted the injury for which the law will not excuse her. The driver of an automobile must exercise such care in respect to speed, warning of approach and management of the car as will enable him to anticipate and avoid collisions which the nature of the machine and the locality may reasonably suggest is likely to occur in the absence of such precaution. *American Railway Express Company* v. *Rogers,* 93 W. Va. 287; *Deputy* v. *Kimmell, supra.* Defendant admits a speed of from 20 to 25 miles per hour at the place of the tragedy. It is fair to assume that she did not overestimate the speed. All the facts and circumstances indicate too high a rate of speed under the circumstances, for if defendant had had the car under proper control at that point, the result would not likely have been so disastrous. We think the instruction as given was improper.

Defendant's instruction number 11 told the jury in substance that if they believed from the evidence that Chapman saw the defendant coming in his direction and attempted or undertook to cross the road in front of the automobile and was thereby injured, then they should find for the defendant

unless they should believe from the evidence that defendant thereafter saw him, and by the use of ordinary care could have seen him, and by the use of ordinary care could have stopped her car in time to avoid striking him. Whether or not Chapman saw the defendant's approach, no one can say. His lips were sealed in death, and no witness testified that he did. Thompson on the truck neither saw her nor heard her horn; and she could not say for certain that she sounded it. The instruction omits to condition its conclusion on a proper rate of speed of the car, and the question of defendant's negligence prior to the time deceased undertook to cross the road, and her omission to give warning of her approach. The driver of an automobile on the public highway is guilty of actionable negligence if he fails to exercise that degree of care which he ought to observe under the particular circumstances in which he is placed, and if he fails to do so, he is not excused from liability simply because he does not see the person injured until the accident happens. Huddy on Automobiles (7th ed.), § 367, p. 409; § 371, p. 413. Section 590 of that work, among other things, says: ''There can be no duty imposed on a workman to be constantly on the lookout for a motor vehicle; on the contrary it is the duty of drivers of vehicles to observe the street laborers and to avoid contact with them. It is not negligence as a matter of law for a workman to keep his eyes on his work and to fail to look and listen for approaching vehicles, if he remains in one spot.''

A question is sought to be presented respecting defendant's instruction number 12, which the record shows was refused. There is an endorsement on it, ''Refused'', and the order of the court and bill of exceptions so show; but it is contended by counsel, and the circuit judge certifies that in his opinion it was given. However the fact may be, as a new trial is to be awarded, the question becomes immaterial.

The judgment will be reversed, the verdict of the jury set aside, and the plaintiff awarded a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*