Thomas Humphreys, Jr., *Infant, etc. v.* Charleston
Transit Company

(No. 9121)

Submitted September 25, 1940.  Decided October 22, 1940.

*J. Howard Hundley* and *Howard R. Klostermeyer,* for
plaintiff in error.
*Watts & Poffenbarger,* for defendant in error.

Hatcher, Judge:

Plaintiff, an intelligent boy almost fourteen years of
age and an experienced bicycle rider, was riding a bi-
cycle along an unfamiliar street, 30 feet wide and straight
on the section herein concerned, upon which a street car
was approaching at its customary speed (mileage rate
not given).  When within a distance from the car which
he estimated at 150 to 200 feet, he was confronted with
this situation:  To his right, there was no immediate side-
walk, the curb of the street being against a hill, and the
right rail of the car track was 4.6 feet from the curb; to
his left, the left rail was 20.25 feet from the left curb; the

car overhung each rail 1.5 feet; automobiles were parked along the left curb, and an automobile was "coming along" between them and the car. He attempted to ride by the car in the narrow space between it and the right curb (3.1 feet), his left bicycle handle came in contact with the car, he was thrown off the bicycle, struck by the car, and received a severe head injury. The speed of the car was unchecked, the motorman saying he never saw the boy. He recovered a judgment of $8,000.00 against the street car company.

Defendant contends (1) that it was not negligent; (2) that if so, plaintiff was guilty of contributory negligence as a matter of law; (3) that the testimony of two physicians was "objectionable", and materially increased the size of the verdict; (4) that the court erred in giving an instruction tendered by plaintiff and in refusing one tendered by defendant; and (5) that the verdict is against the weight of evidence.

1. Defendant's motorman stated that it was "a very common occurrence" for bicyclists to pass the car in the narrow space between it and the hill. An ex-motorman of defendant, and its witness, confirmed the statement, and said when this occurred the car would be "slowed down" else "they would have struck the car or the car would have struck them." Defendant admits that plaintiff could have been seen from the instant car when five hundred feet distant. But, instead of its motorman keeping the lookout which the local situation demanded and seeing him, there is uncontradicted testimony that just before the accident the motorman was "talking and laughing and cutting up with somebody that was standing there by him." We are of opinion that the conduct of the motorman was primarily negligent. But, contends defendant, the accident "would likely have occurred" even had the motorman been on the lookout, since he would have had the right to assume that plaintiff would avoid the car, citing *Braswell* v. *Virginia Co.*, 162 Va. 27, 173 S. E. 365. While this assumption might exist in the ordinary case, it would not exist here, because it was consid-

ered necessary to slow down cars in order to help bicyclists avoid them.

2. On the question of contributory negligence, defendant relies mainly upon plaintiff's admission that if he had ridden "fast" he would have avoided the car, and his statements warrranting an inference that he did not leave the track until within four or five feet of the car. He did not say he was struck by the front of the car, as defendant assumes, but that he was hit "somewhere near the front." And, he explained that he had intended to pass the car on his left, until he saw the automobile coming up on the left. The law is not critical of the course pursued by one, lawfully in the pathway of imminent danger, when the avenue of escape he intended to take is suddenly closed. *Ritter* v. *Hicks*, 102 W. Va. 541, 544-5, 135 S. E. 601, 50 A. L. R. 1505. Plaintiff was lawfully in the street. An emergency arose when it seemed to him that the oncoming automobile had blocked his way to the left, and the speed of defendant's car bearing down on him, was unchecked. Since reasonable men might differ on the relation of his conduct to the accident, it was for the jury, not the court, to say whether he was negligent, and, if so, whether his negligence was a proximate cause of the accident.

3. The injury to plaintiff's head was a depressed fracture of the skull about the size of a half dollar. The fractured bones were removed, and while the scalp is restored over the fractured area, the bone there never will be. The operating physician testified that plaintiff had made "a very nice recovery", but that his condition was "dangerous." Another physician explained that a blow in the fractured area could bruise the brain easier than elsewhere on the head and could produce another depressed fracture easier than before. Plaintiff testified that after leaving the hospital, he suffered sharp aching pains in his head and his eyes hurt, and while the pains were not as frequent at the time of the trial as at first, his eyes "still hurt a lot." Two specialists concurred that his vision was normal, but that the right optic disk was blur-

red on one side, indicating as one said a "low grade inflammation," and that the left optic disk was blurred generally and distinctly paler than normal; that this abnormality indicated an atrophy of the optic nerves; that a depressed fracture could have caused this; and that they could not say whether it would be progressive or not.

Defendant contends that this last statement is "purely speculative," that the verdict is based thereon and is "without any adequate basis for assuming that plaintiff's eyes in all reasonable probability will be permanently injured." We cannot follow this contention. Had the specialists ventured an opinion as to the progress of plaintiff's present eye condition, then the charge of speculation might have some warrant. But the professional inability and refusal to forecast the outcome is the very antithesis of speculation. Furthermore, plaintiff's one instruction did not refer to the condition of his eyes. The jury rendered a general verdict. Its amount, considering the pain suffered and the increased danger of further injury to plaintiff's brain, is not so great as to imply necessarily that the jury assumed the eye injuries would be progressive.

4. Plaintiff's only instruction contained two phrases of which defendant now complains. They are italicized in the following excerpt: " * * * and *if you believe* the plaintiff was on or near the said street car tracks while riding his bicycle * * * and where he was seen, or where by the exercise of reasonable care he could have been seen by the motorman, and in a position of danger, it was then the duty of said motorman to use all reasonable means to avoid injury to said plaintiff *and his failure so to do,* would make the defendant company liable in damages for any injury resulting proximately therefrom, unless you believe the plaintiff was guilty of contributory negligence." The phrases should, of course, have referred to the evidence; but in both instances, the predications were made upon uncontradicted evidence, and so the omissions are merely formal. Moreover, at the trial, the

only objections registered against the instruction were that it did not "correctly state the preponderance of the evidence" and that plaintiff was guilty of legal negligence. As already shown, neither of these objections was well taken.

The instruction of defendant, refused, would have exonerated it if the evidence warranted the belief that plaintiff "had safely passed the front end of the street car and * * * thereafter drove his bicycle into and against the left rear side of the street car." Another instruction of defendant, given, would have exonerated it if the evidence warranted the belief that plaintiff was injured because he negligently permitted his bicycle to strike "the left rear side of the defendant's street car." In order for plaintiff's bicycle to have struck the *left rear side* of the car, as contemplated in the instruction given, the bicycle would necessarily have passed safely the front end of the car, as stated in the instruction refused. We are of opinion that such safe passage was implicit in the instruction given, and its duplication in the one refused was not requisite.

5. The last point of error—that the evidence preponderates against the verdict—is based on the testimony of two witnesses for defendant showing, and of two tending to show, that plaintiff's bicycle struck the rear of the street car. The first two claimed to have seen plaintiff in the passageway. One said that the bicycle struck "the upper edge of the rear door"; the other that the bicycle struck "the back end of the car." Both said they saw him getting up afterwards. Neither said that he was thrown on his head or otherwise accounted for the fracture which was on top of his head. The other two witnesses said simply that they heard a bump near the rear of the car. Their testimony in no way discredits plaintiff's. He said that after being struck near the front of the car, he was "knocked not plumb under the wheels but under the side" of the car and as he tried to get up, the back of his head hit something. If so, because of the rapid progression of the car (he said it was running "fast"), the *something*

which hit his head was patently toward the rear of the car. Defendant may claim a numerical preponderance of witnesses on this point, but, under the circumstances, it was nevertheless a jury question. We do not consider the point, however, of vital consequence. It is not material whether plaintiff received his injury at the front or the rear of the car, provided he was not proximately negligent and the unchecked speed of the car caused him to lose control of his bicycle and be thrown.

With the greatest deference to our dissentient, we are of opinion that he has not given due weight to the practice observed by motormen of slowing down cars when bicyclists passed between them and the hill—a practice not followed in this case. And we cannot give weight to speculaton, as dissentient has, upon what belated assumption the instant motorman might have drawn from an occurrence of which he was admittedly ignorant.

The judgment is affirmed.

*Affirmed.*

Fox, Judge, dissenting:

I respectfully dissent from the ruling of the majority of the court in this case.

If this were a case where it could be said that the negligence of the defendant in operating its street car, or the contributory negligence of the plaintiff, prior to the time when the car passed him, was the proximate cause of the injury, then I would say that the verdict of the jury, on conflicting evidence, should control. But in my view of the case, the accident in which the plaintiff was injured did not result from any negligence with which the defendant can be charged, but was occasioned by events over which it had no control, and which the utmost care could not have prevented. As I read the evidence, the injured boy passed the front of the street car of the defendant, and to a point where defendant's motorman could not observe his actions. Any negligence of the defendant in operating the street car while the plaintiff

was approaching the same, or any contributory negligence of plaintiff in relation thereto, 'passed from the picture. Certainly, when the plaintiff passed the front of the street car, the motorman, had he been cognizant of the plaintiff's presence, would have had the right to assume that all risks of danger had passed. Then it was that the bicycle which the plaintiff was riding in some way collided with the street car, and he was thrown and injured. I think the evidence overwhelmingly sustains this theory, and I am therefore unable to see how, on the case presented, the defendant can be held to responsibility.