WILLIAM H. STATES, JR.

*v.*

RISS & CO., INC., *et al.*

(No. 10540)

Submitted September 15, 1953. Decided December 1, 1953.

2

*Tusca Morris, Robert C. Morris,* for plaintiff in error.

*Steptoe & Johnson, Oscar J. Andre* and *Kingsley R.*

*Smith,* for *Riss & Co., Inc.* and *Herschel Rose, Jr.,* for *Daniel A. Heenan,* defendant in error.

BROWNING, JUDGE:

This is an action of trespass on the case arising out of a collision which occurred in Monongalia County on November 11, 1950.

The plaintiff, William H. States, Jr., is owner and operator of a trucking line with headquarters at Croydon, Pennsylvania. On the morning of November 11, 1950, he was engaged in transporting, in a truck driven by himself, a load of butter and frozen foods from Bowmandale, Pennsylvania to Charleston, West Virginia for the Commodity Distribution Agency of the United States Department of Agriculture.

The defendant, Heenan, the owner of the other truck involved in the collision, had rented or leased his truck to, and was engaged as driver by, the defendant, Riss & Company, Inc., for the purpose of transporting a load of aspirin from Trenton, New Jersey to Wheeling, West Virginia. Signs were placed on both sides of the tractor with the information that the tractor-trailer had been leased by Riss & Company, Inc., and giving the I.C.C. permit number.

States and Heenan, who had been previously acquainted, met by prearrangement at a trucker's stop in Twin Gables, Pennsylvania. Heenan and States both testified that here Heenan was informed that the Pennsylvania authorities were weighing trucks to the west on the turnpike, and, inasmuch as Heenan's truck was overloaded, it was decided that Heenan would follow States as far as Fairmont, West Virginia. Several stops were made for rest and food, the last stop being made close to the West Virginia line on the night of November 10-11, 1950. At 3:30 A. M. on November 11, the trucks again moved south through Morgantown towards Fairmont, States approximately two miles ahead of Heenan.

As States climbed the crest of a hill and proceeded downgrade, he testifies that he noticed the air pressure in his braking system dropping, and pulled off on the berm of the highway. He immediately put out flares to the front and rear of his unit, and one near the center. While returning to the truck after placing the front flare, he testifies that a car proceeding northward passed at a high rate of speed on the wrong side of the road. He then saw the lights of a truck in his rear vision mirror, felt an impact, and jumped or was thrown to the pavement, injuring his arm, as his trucking unit went over a 14′ embankment.

Heenan testified that as he cleared the top of the hill and started down, he was aware of the flares some 500 or 600 yards ahead. He was proceeding at a speed of 10 to 12 miles an hour, noticed the car approaching him at great speed on his side of the road and cut to the right to avoid it. In attempting to turn back onto the road, his right front fender collided with the rear of States' truck, catching his bumper, and setting States' truck in motion. The momentum pulled Heenan's truck over the embankment where it landed upside down on top of States' truck. Both trucks caught fire and were totally destroyed along with their cargoes. Heenan testifies that he believed his truck to be on fire, possibly the refrigeration unit, immediately before the collision. There were no other eye witnesses, although another trucker, Hebb, testifies that he came upon the scene 5 or 10 minutes later after passing a car which had approached him at great speed on the wrong side of the road. When Hebb arrived both trucks were burning furiously.

States asks damages in this action for the loss of the tractor-trailer, equipment, personal effects, 44,000 pounds of butter, frozen foods and for the injury to his left elbow.

The defendants seek to avoid liability on the ground that Heenan was confronted with a sudden emergency when faced with the oncoming car on his side of the road. The defendant, Riss & Company, Inc., also contended that

the collision was the result of fraud and collusion between States and Heenan. In support of this contention, it introduced testimony concerning two other accidents in which the plaintiff's company was involved. One occurred on October 2, 1950 near Darlington, Maryland when a truck, owned by Riss & Company, Inc., and driven by defendant Heenan, caught fire and burned. The truck contained over 100 cases of butter, consigned to the same authority in West Virginia, which the States Company had agreed to transport. The other accident occurred on January 18, 1951 near Napier, West Virginia. The truck was owned by one Smith, and allegedly carried over 400 cases of butter consigned to the identical authority in West Virginia, which the plaintiff States had contracted to transport. This accident was similar in that the truck had inexplicably gone over an embankment and burned. In each accident, the entire cargo was destroyed. In the instant case, the quantity of butter lost was alleged to be 703 cases, though witnesses observed only a relatively small stream of butter issuing from the truck. The defendant, Riss & Company, Inc., also introduced testimony to the effect that States and Heenan had denied any acquaintanceship, and attempted to impeach States' testimony by showing a conviction for an income tax violation.

The jury returned a verdict for the defendants, and judgment was entered thereon, to which this Court granted a writ of error and supersedeas on December 22, 1952.

The plaintiff makes numerous assignments of error, which may be grouped into three classifications: First: The giving of defendant Heenan's Instructions Numbers 6 and 16, based upon the defense of a sudden emergency; Second: The admission of testimony over plaintiff's objection of alleged fraud and collusion between States and Heenan, including testimony regarding two other fires which resulted in the destruction of butter, one prior to the loss in this case and the other subsequent thereto; and Three: The introduction of testimony of the defend-

ant, Riss & Company, Inc.; of a Federal conviction of States for income tax evasion, subsequent to the collision and fire in this case, but prior to the trial.

If it was proper for the trial court to give Heenan's Instruction Number 16, certainly the giving of Heenan's Instruction Number 6 was not error, therefore, we will recite and discuss Instruction Number 16 in some° detail. It is as follows:

> "The Court instructs the jury that where a person is confronted with a sudden emergency, the failure on his part to exercise the best judgment the situation renders possible does not establish such lack of care on his part as will render him liable for any resulting injury. Stated another way, the law does not require a person who is acting in the face of sudden danger that his act be infallible or even that he act wisely. Therefore, in this case if you believe from the evidence that, as the defendant Heenan approached the place where States' truck was parked, operating his truck with reasonable care and caution under the circumstances, Heenan encountered a car coming from the opposite direction at a high rate of speed and on Heenan's side of the road, the approach of which car Heenan had not observed and by the exercise of reasonable care could not have observed before that time, and that this situation created for Heenan a sudden emergency, then Heenan was not guilty of any negligence if you further find that Heenan thereafter did what an ordinary, reasonable, prudent person would have done under the same or similar circumstances."

Counsel for the plaintiff insist with considerable vehemence that the facts in this case did not justify the giving of this instruction, and rely principally for their contention upon Chaney v. Moore, 101 W. Va. 621, 134 S. E. 204. In that case, the defendant was operating a motor vehicle upon a public highway and killed plaintiff's decedent, an employee of the State Road Commission, who was at the time of the collision working with other men on the highway. The defendant passed a danger

sign which stated that men were working ahead, and admitted a speed of twenty to twenty-five miles an hour when the deceased was struck. There was evidence on behalf of the plaintiff, although apparently disregarded by the jury, to the effect that the defendant's car skidded about ninety feet from the time she first applied her brakes until she brought her automobile under control. Upon this factual situation in the *Chaney* case, this Court said: "* * * In this case the defendant should not be excused from liability for negligence on her part, though she may have been, as she claims, confronted by a sudden emergency. By operating her car at a dangerous rate of speed around the truck and the workmen on the road she created the emergency and inflicted the injury for which the law will not excuse her. The driver of an automobile must exercise such care in respect to speed, warning of approach and management of the car as will enable him to anticipate and avoid collisions which the nature of the machine and the locality may reasonably suggest is likely to occur in the absence of such precaution. * * *" While the rule laid down in the *Chaney* case is not necessarily limited to the injury of workmen on a public street or highway, the Court said: "Again we say that while this instruction may state the law applicable to contributory negligence generally, it is not in all respects applicable to the case of workmen on the public highways.* * *" In quoting Huddy on Automobiles, the opinion further states: "There can be no duty imposed on a workman to be constantly on the lookout for a motor vehicle; on the contrary it is the duty of drivers of vehicles to observe the street laborers and avoid contact with them. It is not negligence as a matter of law for a workman to keep his eyes on his work and to fail to look and listen for approaching vehicles, if he remains in one spot." That case is clearly distinguishable from the present one, and the cases cited involving violations of traffic laws and ordinances are not applicable. The Heenan vehicle was not attempting to pass the States truck, within the meaning of the road law, at the time of the collision, the plaintiff's truck being at that time completely off of the

hard surfaced portion of the highway and stationary at the time of the collision.

The plaintiff maintains that, upon the facts in this case, the trial court was in error in not holding as a matter of law that the doctrine of sudden emergency was not applicable for the reason that the defendant Heenan, by his negligent conduct, created the situation which he relied upon in his defense as a sudden emergency. As heretofore related, there were only two witnesses to the occurrences immediately preceding the collision, the plaintiff and the defendant Heenan, and there is little, if any, conflict in their testimony. Heenan states that upon observing the flares at plaintiff's truck from a distance of about 500 yards, he shifted to a lower gear and proceeded to a point approximately 40 or 50 feet from plaintiff's truck at a speed of 10 to 12 miles an hour. While it is true that there were flares which States had planted at and near his parked vehicle, it was apparent to Heenan as he approached them that the States truck was completely off the hard surfaced part of the highway and on the berm thereof. Heenan testified, upon cross-examination that he realized the significance of the flares, and that it meant that a truck was having trouble of some kind. He further stated, upon cross-examination, that he did not stop when he saw the flares, and that if he did stop on all such occasions, he would never get to the place where he was going. There was no obstruction upon the traveled portion of the highway, and in the absence of unforeseen events, Heenan could have proceeded past the States truck on his side of the road and other vehicles travelling in the opposite direction could have done likewise. Therefore, we cannot say, as plaintiff insists that we do, that Heenan was under obligation, upon observing the flares near the States vehicle, to either stop his truck completely or proceed toward it with his truck under absolute control. It was, at best, a question for the jury as to whether he approached the place where the States truck was parked with reasonable care and caution under the circumstances.

Heenan states that he was first confronted with the approaching automobile on his side of the highway when he was at a point about 40 or 50 feet from the States vehicle, and the plaintiff contends that the failure of Heenan to observe the other vehicle, prior to that time, was in itself such negligence as would prohibit him from offering the defense of sudden emergency. There was a rather sharp curve some distance below the place where the States truck was parked, and Heenan maintains that it was this fact that prevented him from observing the approaching automobile sooner. The evidence would have justified the jury in saying that the approaching automobile was within the range of vision of Heenan at a point farther away than he states he first observed it. Even if Heenan had observed the lights of the approaching automobile at a greater distance, we cannot say, as a matter of law, that he should have been aware of the fact that the vehicle was approaching on the wrong side of the road. The jury, having heard all of the testimony and viewed the premises, decided the issue in favor of the defendants, as we believe it had a right to do.

A more interesting and troublesome question arises out of the occurrences after Heenan was confronted with the oncoming automobile and suddenly turned his truck from the right lane of the surfaced road onto the berm. Heenan says he cut sharply to the right avoiding a headon collision with the other vehicle, again cut the tractor to the right to avoid a collision between the passing automobile and the rear of his trailer, and that immediately thereafter he cut sharply to the left to avoid striking the parked States truck. Heenan testified that at the time he cut back to the left toward the highway, he thought he had room to pass the States truck and thus avoid a collision with both vehicles. Upon cross-examination on this question, Heenan admitted that he made "a mistake of judgment" in that he was closer to the States truck than he thought he was and a collision resulted. The plaintiff maintains that even if there had been a sudden emergency which justified Heenan in doing the things which he did

up to that point, the emergency had passed, the oncoming passenger vehicle having proceeded on its way, and that the action of Heenan thereafter in striking plaintiff's truck because of a mistake of judgment was negligence not excusable by the fact that he had recently been in imminent peril. In the case of *Horton Motor Lines* v. *Currie,* (C. A. 4), 92 F. 2d. 164, it was held that the driver of a tractor-trailer was guilty of actionable negligence in miscalculating the distance between his unit and a parked vehicle, which resulted in injuries to a pedestrian, even though he was being crowded by a truck approaching from the opposite direction where he thought he could pass and took a chance. There is, of course, much authority in this State and elsewhere upon the question of sudden emergency or imminent peril, including *Tochek* v. *Monongahela Transport Co.,* 109 W. Va. 20, 152 S. E. 776; *Robertson* v. *Hobson,* 114 W. Va. 236, 171 S. E. 745; *O'Dell* v. *Universal Credit Co.,* 118 W. Va. 678, 191 S. E. 568; *Humphreys* v. *Charleston Transit Co.,* 122 W. Va. 571, 11 S. E. 2d. 745; 60 C. J. S., Motor Vehicles, § 257.

However, upon the precise question of the negligence of a defendant, occurring subsequent to the time when he has emerged from a sudden emergency or imminent peril, we find no authority in the case law nor helpful discussions in the texts. If Heenan had avoided striking the States truck, and proceeded down the highway a distance of a hundred feet, or perhaps a shorter distance, and committed an act of negligence by misjudgment or otherwise, certainly he could not, in defense of his acts, rely upon the sudden emergency from which he had shortly before extricated himself. The evidence shows that at a speed of 10 miles an hour Heenan's truck could have been stopped by the application of the brakes in 45 feet. At the time he was confronted with the automobile on his side of the road, he was approximately that distance from the States truck, moving about 10 miles an hour, and at that speed the truck would traverse a distance of 15 feet in one second. Therefore, no more than three seconds elapsed from the time the alleged sudden

emergency arose until the collision occurred. After making the two sharp turns to the right, and during that time having covered some of the 45 feet between his truck and the States truck, it is evident that his only hope of avoiding a collision was cutting back to the left, inasmuch as his application of the brakes at that time would not have stopped the truck before it struck the other vehicle, even though he may have mistakenly thought otherwise.

It is too well established to require much comment or citation of authority that a person confronted with a sudden emergency or imminent peril will not be held responsible for the consequences of his acts or course of action, even though such would constitute negligence under ordinary circumstances, unless such acts or omissions are such that an ordinary prudent person would have avoided them even in an emergency or peril similar to the one in question. Whether such care is exercised or not is ordinarily a jury question.

The facts and circumstances in this case do not remove it from the general rule, and, likewise, the question of whether the defendant Heenan committed an act of negligence after the emergency had passed was for the jury, and it must be assumed that it has passed upon it, although it was not specifically instructed upon that point, no instructions to that effect having been offered.

While the defendant Riss & Company, Inc., relies with the defendant Heenan upon the defense of sudden emergency, to relieve Heenan of negligence by attempting to place that stigma upon the unknown driver of the passenger vehicle, and insists that his act was the proximate cause of the collision, and resultant damage to plaintiff's vehicle, cargo and person, it, nevertheless, was permitted to prove certain relationships between States and Heenan, and the destruction by fire of. two other cargoes of butter, in an attempt to establish collusion. The court permitted this evidence to go to the jury, over objection of plaintiff. It is well established in criminal proceedings that proof of other crimes is admissible where such other crimes

12

tend to show a general scheme or plan of which the crime charged is a part, if the other crimes are similar, near in point of time and have some logical connection with the offenses for which the defendant is being tried. 5 M. J., Criminal Procedure, § 59; *State* v. *Gargliania,* 138 W. Va. 376, 76 S. E. 2d. 265.

In 20 Am. Jur. 281, Evidence, § 303, we find this statement: "* * * The law in civil cases, as well as in criminal cases, permits proof of acts other than the one charged which are so related in character, time, and place of commission as to tend to support the conclusion that they were part of a plan or system or as to tend to show the existence of such a plan or system. * * *" *Bank of Pennsboro* v. *Barker,* 75 W. Va. 244, 83 S. E. 898, is to the same effect.

Mrs. Bucy, who lived near the scene of the collision and fire, testified that the plaintiff and Heenan came to her home shortly after the collision, while the fire was still burning, and that while there the plaintiff informed her, in the presence of Heenan, that they did not know each other except that as truck drivers they sometimes met on the road. Heenan, from the same place, called Mr. Waggy, an official of the Commodity Distribution Agency, in Charleston at the request of the plaintiff to inform him of the wreck, stating that he was a bystander at the fire, and that the plaintiff had been injured and was on his way to a hospital. Neither Heenan nor the plaintiff was removed to a hospital, nor did they receive medical attention until two days after the collision when States was treated in Philadelphia by an osteopathic physician.

A member of the West Virginia Department of Public Safety testified that Heenan stated that he was not personally acquainted with States, and further testified that later, during the same day when plaintiff and Heenan were present in his office in Morgantown, plaintiff stated that they did not want an investigation of the accident because they had decided who was at fault. Several witnesses testified as to the small amount of butter which

they saw at the time of the fire. At the trial, Heenan and plaintiff stated that they had been acquainted for approximately eight years; that Heenan had purchased the truck he was driving at the time of the collision from States, about a month before the fire; that Heenan's truck was at plaintiff's truckyard at the time an agreement was made for hauling a load of aspirin for Riss & Company, Inc., and plaintiff made the arrangements without the knowledge of Heenan; that on the night before Heenan and plaintiff left with their cargoes for Wheeling and Charleston, respectively, Heenan had traveled approximately one hundred miles with plaintiff in a futile attempt to get plaintiff's stalled truck, loaded with the cargo of butter, onto the main highway, and that approximately two hundred cases of butter had been removed from it in an effort to lighten the burden, but they stated it was replaced before they left that night; that Heenan and plaintiff met by arrangement at Twin Gables, Pennsylvania, and travelled together to the point of the collision, although separated at times by a few miles; that Heenan left the Pennsylvania Turnpike at Donegal, and travelled with plaintiff through Uniontown, Morgantown and to the scene of the collision when there were available to him several more direct routes to Wheeling, although Heenan and the plaintiff testified as to why this was done, as heretofore related; that about an hour and a half before the accident, the defendant Heenan awoke the plaintiff while he was asleep in his truck, and parked off the highway, by knocking on the window of his cab, but Heenan said he did not recognize the States truck as he approached it shortly before the collision, and did not know that the truck belonged to the plaintiff until after the trucks had gone over the embankment; and that the plaintiff testified that he did not know whose truck had struck him until after he found Heenan over the embankment, and had made no effort to ascertain whether it was the Heenan truck approaching, although they were travelling together, and States was in trouble.

The trial court then permitted the defendant Riss & Company, Inc., to show that a cargo of butter, consigned to the same consignee in Charleston, was destroyed by fire on October 2, 1950; that the vehicle was owned by Riss & Company, Inc., loaned to plaintiff, and driven by Heenan. Riss & Company, Inc., was also permitted to prove in considerable detail that another cargo of butter in transit to the same consignee in Charleston was destroyed by fire on January 18, 1951, near Napier, West Virginia. The truck carrying that cargo was owned by one Charles Smith, who had purchased it from the plaintiff, and the transportation of the butter was upon an agreement between Smith and plaintiff, similar to the one existing between Heenan and Riss & Company, Inc., in the instant case.

Lieutenant W. E. Murphy, a member of the West Virginia Department of Public Safety, testified that he saw the tractor-trailer parked on the berm of the highway near Napier, and headed north, which is in the opposite direction from Charleston, which was its destination. He stated that upon asking the driver if he needed assistance, he was informed that he did not, and he observed that the driver was talking to a man, unknown to him, in an automobile with a foreign license plate parked to the rear of the trailer. Upon his return, about an hour and a half later, Lieutenant Murphy stated that he found the tractor-trailer over the hill and in the process of burning. The driver informed him that he had sent for the fire department, and that he had about forty thousand pounds of butter in his cargo. Members of the volunteer fire department of the Town of Sutton testified that they responded to the call, put out the fire, and there were less than fifty cases of butter in the truck, although the shipment was supposed to contain four hundred and sixty-one cases. Although the fire was extinguished and the firemen left the scene, the truck and cargo caught fire again later in the day and were completely destroyed. While there was no evidence to place the plaintiff States at the scene of either the fire in Maryland or the one at Napier, we be-

lieve that the trial court did not err in permitting this evidence to go to the jury, circumstantial though it was, upon the issue as to whether the destruction of the plaintiff's cargo was the result of an accident or otherwise.

This Court said in *State* v. *Huffman*, 69 W. Va. 770, 774, 73 S. E. 229, that: "Generally where evidence of previous offenses has been admitted for any of the purposes indicated they have been in some way traced to the defendant, but as we understand the authorities, this is not a prerequisite to its admission, if it is intended to be limited to proving that the particular fire in question was not accidental. * * *"

We come now to a discussion of the final assignment of error, relating to the ruling of the trial court in permitting evidence of a criminal conviction of States for income tax evasion by defendant Riss & Company, Inc., to affect his credibility as a witness. The plaintiff complains that the admission of such testimony prejudiced the jury against him in deciding the issues involved in this case. Perhaps it did. That was the purpose for which it was offered, and if this evidence was admissible, the plaintiff, like any other witness, must suffer the consequences of any shadow thereby cast upon him as a witness.

The rule is well established in this State that in a criminal trial a defendant who elects to testify in his own behalf becomes subject to the rules of evidence pertaining to all other witnesses. His credibility then may be impeached in the same manner as other witnesses. *State* v. *Friedman*, 124 W. Va. 4, 18 S. E. 2d. 653; *State* v. *Taylor*, 130 W. Va. 74, 42 S. E. 2d. 549.

Code, 57-3-6, provides that: "In any trial or examination in or before any court or officer for a felony or misdemeanor, the accused shall, with his consent (but not otherwise), be a competent witness on such trial or examination; and if he so voluntarily becomes a witness he shall, as to all matters relevant to the issue, be deemed to have waived his privilege of not giving evidence

against himself and shall be subject to cross-examination as any other witness; * * *."

We find no decided cases in this State as to the rule in civil cases. The statute just quoted obviously applies only to criminal proceedings, although including both felonies and misdemeanors. In 58 Am. Jur. 397, Witnesses, § 734, we find this statement: "Although the disqualification of witnesses by reason of the conviction of crime has been removed by statute in most jurisdictions, these statutes usually by their express terms subject witnesses to impeachment by proof of their convictions for crime; and it is universally recognized that for the purpose of impeachment of a witness or an attack upon his credibility, the attorney for the adverse party, by cross-examination or otherwise, may bring out the fact of a previous conviction of the witness for a crime, or at least show a previous conviction of a felony or of a crime involving moral turpitude. In general, the rule applies in both civil and in criminal cases. In many states the rule is statutory."

This Court sees no reason why the rule applicable to criminal cases should not apply to civil proceedings. However, we do not propose to enlarge the rule as to civil cases beyond that now prevailing in criminal proceedings. We hold that the admissibilty of such evidence to attack the credibility of a witness in civil cases rests in the sound discretion of the trial court. This Court will not consider the admissibility of such evidence reversible error unless the trial court has clearly abused its discretion in this regard. We believe that it was within the sound discretion of the trial court in this case to permit testimony of a felony conviction of the plaintiff in a Federal court for income tax evasion when the plaintiff had, upon cross-examination about the matter, been evasive. Questions of fact were at issue in this prolonged trial, and we believe that each litigant had ample opportunity to present evidence that was relevant and proper in support of his theory of the case. The jury was properly instructed upon the material issues, and they, the triers of the facts, having determined those issues

adversely to the plaintiff, this Court will not disturb their verdict.

The judgment of the Circuit Court of Marion County is affirmed.

*Affirmed.*